XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
JOHN W. KILLEEN, SBN 258395
GABRIELLE D. BOUTIN, SBN 267308
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-6053
  Fax: (916) 324-8835
  E-mail: Gabrielle.Boutin@doj.ca.gov
*Attorneys for Governor Gavin Newsom and
Attorney General Xavier Becerra, in their
official capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE GEO GROUP, INC.,** | Case No. 3:19-cv-2491-JLS-WVG |
| Plaintiff, | |
| v. | **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| **GAVIN C. NEWSOM, in his official capacity as Governor of the State of California; XAVIER BECERRA, in his official capacity as Attorney General of the State of California,** | Date:      April 23, 2020<br>Time:      1:30 p.m.<br>Dept:      4D<br>Judge:     Hon. Janis L. Sammartino<br>Trial Date: None set<br>Action Filed:    1/24/2020 |
| Defendants. | |

1

**TABLE OF CONTENTS**

2

|  |  | **Page** |
|---|---|---|
| Introduction | | 1 |
| Background | | 1 |
| I. | AB 32 | 1 |
| II. | Relevant Federal Immigration Detention Statutes | 4 |
| III. | Relevant Federal Law Related to U.S. Marshal Service Detention Facilities | 5 |
| Applicable Legal Standard | | 6 |
| Argument | | 6 |
| I. | Plaintiff Is Not Likely to Succeed on the Merits | 6 |
| | A. AB 32 Does Not Violate Governmental Immunity Principles | 7 |
| | 1. AB 32 Does Not Directly Regulate the Federal Government | 7 |
| | 2. AB 32 Does Not Discriminate Against the Federal Government | 10 |
| | a. AB 32 does not treat private companies that contract with the federal government worse than private companies that contract with state or local governments | 10 |
| | b. AB 32's exceptions are not discriminatory | 11 |
| | B. AB 32 Is Not Preempted by Federal Law | 14 |
| | 1. Congress Did Not Clearly and Manifestly Intend to Preempt AB 32 Through Federal Immigration Law | 15 |
| | 2. Congress Did Not Clearly and Manifestly Intend to Preempt AB 32 Through Federal Criminal Law | 20 |
| II. | Plaintiff is Not Otherwise Entitled to a Preliminary Injunction | 21 |
| | A. Plaintiff Fails to Demonstrate Irreparable Harm | 21 |
| | B. The Balance of Hardships and the Public Interest Weigh Against Granting Preliminary Relief | 22 |
| III. | Plaintiff is Not Entitled to a Permanent Injunction | 23 |
| Conclusion | | 23 |

i

1

# TABLE OF AUTHORITIES

2

**Page**

3
CASES

4
*Arizona v. United States*

5
    567 U.S. 387 (2012) ........................................................................... 5, 17

6
*Baby Tam & Co. v. City of Las Vegas*

7
    154 F.3d 1097 (9th Cir. 1998) .................................................................. 23

8
*Boardman v. Pac. Seafood Grp.*

9
    822 F.3d 1011 (9th Cir. 2016) .................................................................. 21

10
*Boeing Co. v. Movassaghi*

11
    768 F.3d 832 (9th Cir. 2014) .............................................. 7, 9, 10, 11

12
*Brown v. Plata*
    563 U.S. 493 (2011) ................................................................................ 13

13

14
*Caribbean Marine Servs. Co. v. Baldrige*
    844 F.2d 668 (9th Cir. 1988) ................................................................... 21

15
*Chamber of Commerce of U.S. v. Whiting*

16
    563 U.S. 582 (2011) ................................................................................ 16

17
*Chinatown Neighborhood Ass'n v. Harris*

18
    794 F.3d 1136 (9th Cir. 2015) .................................................................. 14

19
*Coal. for Econ. Equity v. Wilson*

20
    122 F.3d 718 (9th Cir. 1997) ..................................................................... 6

21
*Comm. of Cent. Am. Refugees v. INS*

22
    795 F.2d 1434 (9th Cir. 1986) .................................................................. 18

23
*Crosby v. National Foreign Trade Council*
    530 U.S. 363 (2000) .......................................................................... 18, 19

24

25
*CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*
    928 F.3d 832 (9th Cir. 2019) .............................................................. 14, 16

26
*Davis v. Michigan Dep't of Treasury*

27
    489 U.S. 803 (1989) .......................................................................... 12, 13

28

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Dawson v. Steager*
    139 S. Ct. 698 (2019) ........................................................................ 12

4

5

*DeCanas v. Bica*
    424 U.S. 351 (1976) .......................................................................... 15

6

7

*Gade v. National Solid Wastes Management Ass'n*
    505 U.S. 88 (1992) ............................................................................ 14

8

9

*Gartrell Construction Inc. v. Aubry*
    940 F.2d 437 (9th Cir. 1991)............................................................. 20

10

11

*Goodyear Atomic Corp. v. Miller*
    486 U.S. 174 (1988) ............................................................................ 8

12

13

*Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*
    471 U.S. 707 (1985) .......................................................................... 15

14

15

*In re Nat'l Security Agency Telecomms. Records Litig.*
    633 F. Supp. 2d 892 (N.D. Cal. 2007)................................................. 7

16

17

*Kansas v. Garcia*
    No. 17-834, slip op. (U.S. 2020) ................................................. 19, 21

18

19

*Knox v. Brnovich*
    907 F.3d 1167 (9th Cir. 2018)........................................................... 14

20

*Medtronic, Inc. v. Lohr*
    518 U.S. 470 (1996) ..................................................................... 14, 16

21

22

*North Dakota v. United States*
    495 U.S. 423 (1990) ..........................................................7, 8, 10, 11

23

*Public Utilities Comm'n. of Cal. v. United States*
    355 U.S. 534 (1958) ............................................................................ 8

24

25

*Puente Arizona v. Arpaio*
    821 F.3d 1098 (9th Cir. 2016)........................................................... 15

26

27

*Red Top Mercury Mines, Inc. v. United States*
    887 F.2d 198 (9th Cir. 1989)............................................................. 13

28

iii

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3
4

*Student Loan Serving Alliance v. District of Columbia*
    351 F. Supp. 3d 26 (D.D.C. 2016) ....................................................... 20

5
6

*Thomas v. Cty. of Los Angeles*
    978 F.2d 504 (9th Cir. 1992) ............................................................... 6

7
8

*United States v. Arizona*
    641 F.3d 339 (9th Cir. 2011) ............................................................. 22

9
10

*United States v. California*
    921 F.3d 865 (9th Cir. 2019) ............................................. 7, 10, 14, 16

11

*United States v. City of Arcata*
    629 F.3d 986 (9th Cir. 2010) ........................................................... 7, 8

12
13

*United States v. City of Pittsburg, Cal.*
    661 F.2d 783 (9th Cir. 1981) ............................................................. 19

14
15

*United States v. Nye Cnty.*
    178 F.3d 1080 (9th Cir. 1999) ........................................................... 11

16
17

*Virginia Uranium, Inc. v. Warren*
    139 S. Ct. 1894 (2019) ..................................................................... 16

18
19

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ................................................................... 6, 21, 22

20

*Wyeth v. Levine*
    555 U.S. 555 (2009) ......................................................................... 14

21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES
### (continued)

2

3

Page

STATUTES

United States Code, Title 8
    § 1103 ................................................................................................ 4, 5
    § 1103(a) ................................................................................................ 5
    § 1103(a)(4) ........................................................................................... 5
    § 1103(a)(6) ........................................................................................... 5
    § 1103(a)(11) .................................................................................. 16, 17
    § 1103(a)(11)(B) .................................................................................. 5
    § 1226 .................................................................................................... 4
    § 1231 ................................................................................................ 4, 5
    § 1231(g) ......................................................................................... 17, 18
    § 1231(g)(1) ....................................................................... 4, 16, 17, 19
    § 1357(g)(1) ....................................................................................... 17
    § 1357(g)(1), (3) ................................................................................. 5

United States Code, Title 18
    § 4013(a) ............................................................................................ 20
    § 4013(c)(1) ........................................................................... 6, 19, 20
    § 4013(c)(2) ......................................................................................... 6
    § 4013(c)(2)(C) ....................................................................... 6, 20, 21

United States Code, Title 28
    § 530C ............................................................................................... 20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

<u>Page</u>

3   California Penal Code

4       § 5003.1 ...................................................................................3, 11, 12, 13

    § 5003.1(a) .................................................................................................. 3

5       § 5003.1(b) .................................................................................................. 3

6       § 5003.1(c) ................................................................................................ 13

    § 5003.1(e) ............................................................................................ 3, 13

7       § 9500 ......................................................................................................... 3

8       § 9500(a) ............................................................................................... 3, 12

    § 9500(b) .................................................................................................... 3

9       § 9501 ..............................................................................................3, 8, 10

10       §§ 9501-03 ................................................................................................. 8

    § 9502 ................................................................................................... 4, 11

11       § 9502(a) .................................................................................................. 12

12       § 9502 (a)-(g) ............................................................................................. 4

    § 9502(b) .................................................................................................. 12

13       §§ 9502(c) ................................................................................................ 11

14       § 9502(d) .................................................................................................. 12

    § 9502(e) .................................................................................................. 12

15       § 9502(f) .................................................................................................. 12

16       § 9502(g) .................................................................................................. 12

    § 9503 ......................................................................................................... 4

17       § 9505(a) ............................................................................................... 4, 22

18       § 9505(b) ............................................................................................ 12, 13

19   **CONSTITUTIONAL PROVISIONS**

20   United States Constitution

21       Article VI, cl. 2 ......................................................................................21

22   **COURT RULES**

23   Federal Rules of Civil Procedure

24       Rule 65(a)(2)............................................................................................23

25

26

27

28

Opposition to Motion for Preliminary Injunction (19-cv-2491-JLS-WVG)

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3      OTHER AUTHORITIES

4      8 C.F.R.

5          § 2.1 ...................................................................................... 5
           § 287.1(g)............................................................................... 5
6          § 287.5 .............................................................................. 5, 17
7          § 287.5(c)(6) ..................................................................... 5, 17

8      136 Cong. Rec. S17595-01, S17596, 1990 WL 168469 (Oct. 27, 1990)............ 6, 20

9
       AMERICAN CIVIL LIBERTIES UNION, BANKING ON BONDAGE: PRIVATE
10         PRISONS AND MASS INCARCERATION (2011), available at
           https://www.aclu.org/banking-bondage-private-prisons-and-mass-
11         incarceration; ............................................................................ 2

12     Assembly Bill 32
13         2019-2020 Reg. Sess. (Cal. 2019) ............................................... 1
14         § 1 ......................................................................................... 3
           § 2 ......................................................................................... 3
15         § 3 ......................................................................................... 4

16     https://www.cdcr.ca.gov/research/population-reports-2/ ........................ 13

17
       KARA GOTSCH & VINAY BASTI, THE SENTENCING PROJECT,
18         CAPITALIZING ON MASS INCARCERATION: US GROWTH IN PRIVATE
19         PRISONS (2018), available at
           https://www.sentencingproject.org/publications/capitalizing-on-
20         mass-incarceration-u-s-growth-in-private-prisons/................................ 2

21     OFFICE OF THE INSPECTOR GENERAL, U.S. DEP'T OF JUSTICE, REVIEW
22         OF THE FEDERAL BUREAU OF PRISONS' MONITORING OF CONTRACT
           PRISONS (2016), available at
23         https://oig.justice.gov/reports/2016/e1606.pdf................................ 2, 22

24     TARA JOY, JUSTICE POLICY INSTITUTE, THE PROBLEM WITH PRIVATE
25         PRISONS (2018), available at
           http://www.justicepolicy.org/news/12006; ....................................... 2
26

27

28

vii

1
2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

U.S. DEP'T OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL,
MEMORANDUM FOR THE ACTING DIRECTOR, FEDERAL BUREAU OF
PRISONS FROM JEFFERSON B. SESSIONS III RE: RESCISSION OF
MEMORANDUM ON USE OF PRIVATE PRISONS (Feb. 21, 2017),
available at https://www.justice.gov/oip/foia-
library/attorney_general_memorandum_advising_the_federal_bure
au_of_prisons_that_the_department_will_continue_to_use_private
_prisons.pdf/download ..........................................................................................2

U.S. DEP'T OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL,
MEMORANDUM FOR THE ACTING DIRECTOR, FEDERAL BUREAU OF
PRISONS FROM SALLY Q. YATES RE: REDUCING OUR USE OF
PRIVATE PRISONS (Aug. 18, 2016), available at
https://www.justice.gov/OIP/FOIA-Library/davis/download ..............................2

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

The California Legislature determined in 2019, based on ample evidence, that private prisons and detention facilities pose an unacceptable danger to detainees in California.  Pursuant to its sovereign police powers to protect the safety and well-being of all Californians, the Legislature therefore enacted Assembly Bill 32 (AB 32) to generally prohibit private persons and entities from operating detention facilities in the state.

Plaintiff The Geo Group has moved for a preliminary injunction enjoining enforcement of AB 32 on the grounds of intergovernmental immunity and preemption.  However, Plaintiff cannot show a likelihood of succeeding on the merits of either of those claims.  The doctrine of intergovernmental immunity does not apply because AB 32 is a law of neutral applicability that neither directly regulates the federal government nor discriminates against it.  Plaintiff's preemption arguments are equally unavailing because AB 32 does not conflict with any federal law.  What is more, Plaintiff has failed to establish any of the other factors needed for this Court to impose the extraordinary remedy of enjoining a duly enacted state law.  For these reasons, and as further explained in detail below, the Court should deny Plaintiff's motion in its entirety.

**BACKGROUND**

**I.    AB 32**

AB 32 arose from the Legislature's concerns about serious, documented harms to the safety and welfare of those detained in private detention facilities.  *See* Request for Judicial Notice (RJN) Ex. 1 at 4-5; RJN Ex. 2 at 2; RJN Ex. 3 at 1-2; RJN Ex. 4 at 1-9; RJN Ex. 5 at 6-8; RJN No. 6 at 4-5; *see also* Assem. Bill 32, 2019-2020 Reg. Sess. (Cal. 2019) (AB 32).  The Legislature was not alone in these concerns, relying on a number of reports and studies including a report by the U.S. Department of Justice Office of the Inspector General finding that federal private prisons are unsafe, lack transparency and accountability, create unfair and

1

exploitive conditions for detainees, and prioritize profits over inmate rehabilitation and wellbeing.  *See, e.g.*, RJN Ex. 1 at 4; RJN Ex. 4 at 7-8. [1]  In addition, the Legislature was aware that as recently as 2016, the U.S. Department of Justice (DOJ) announced a plan to end its use of private prisons, citing safety and security in the facilities as major reasons.[2]  That decision was later reversed after a change in federal administration, although that change of course came with no explanation regarding the previously asserted safety and security concerns.[3]

When first introduced in the Legislature in 2018, AB 32 applied only to the California Department of Corrections and Rehabilitation (CDCR), prohibiting CDCR from contracting with any private, for-profit prison facility to house state prisoners.  RJN Ex. 1 at 1-4.  As it evolved, the bill was amended to more broadly prohibit anyone from operating a private detention facility in California.  RJN Ex. 4 at 1, 4.  As enacted in 2019, AB 32 encompasses any detention facility operated by

---

[1] *See also* OFFICE OF THE INSPECTOR GENERAL, U.S. DEP'T OF JUSTICE, REVIEW OF THE FEDERAL BUREAU OF PRISONS' MONITORING OF CONTRACT PRISONS (2016), available at https://oig.justice.gov/reports/2016/e1606.pdf, at 14 ("Contract Prisons Had More Frequent Incidents per Capita of Contraband Finds, Assaults, Uses of Force, Lockdowns, Guilty Findings on Inmate Discipline Charges, and Selected Categories of Grievances"); TARA JOY, JUSTICE POLICY INSTITUTE, THE PROBLEM WITH PRIVATE PRISONS (2018), available at http://www.justicepolicy.org/news/12006; AMERICAN CIVIL LIBERTIES UNION, BANKING ON BONDAGE: PRIVATE PRISONS AND MASS INCARCERATION (2011), available at https://www.aclu.org/banking-bondage-private-prisons-and-mass-incarceration; KARA GOTSCH & VINAY BASTI, THE SENTENCING PROJECT, CAPITALIZING ON MASS INCARCERATION: US GROWTH IN PRIVATE PRISONS (2018), available at https://www.sentencingproject.org/publications/capitalizing-on-mass-incarceration-u-s-growth-in-private-prisons/.

[2] U.S. DEP'T OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL, MEMORANDUM FOR THE ACTING DIRECTOR, FEDERAL BUREAU OF PRISONS FROM SALLY Q. YATES RE: REDUCING OUR USE OF PRIVATE PRISONS (Aug. 18, 2016), available at https://www.justice.gov/OIP/FOIA-Library/davis/download.

[3] U.S. DEP'T OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL, MEMORANDUM FOR THE ACTING DIRECTOR, FEDERAL BUREAU OF PRISONS FROM JEFFERSON B. SESSIONS III RE: RESCISSION OF MEMORANDUM ON USE OF PRIVATE PRISONS (Feb. 21, 2017), available at https://www.justice.gov/oip/foia-library/attorney_general_memorandum_advising_the_federal_bureau_of_prisons_that_the_department_will_continue_to_use_private_prisons.pdf/download.

a private, nongovernmental, for-profit entity, and operating pursuant to a contract or agreement with any local, state, or federal governmental entity.  *See* AB 32, §§ 1, 2. Among others, these facilities include prisons and immigration detention facilities. *See* RJN Ex. 6 at 4-5; Cal. Pen Code § 9500.

AB 32 consists of three sections.  Section 1 regulates the California Department of Corrections and Rehabilitation.  AB 32 § 1.  Specifically, as of January 1, 2020, Penal Code section 5003.1 prohibits the department from entering or renewing any "contract with a private, for-profit prison facility located in or outside of the state to provide housing for state prison inmates."  Cal. Penal Code § 5003.1 (a), (b).  Subdivision (e) of section 5003.1 provides that the department may, however, "renew or extend a contract with a private, for-profit prison facility to provide housing for state prison inmates in order to comply with the requirements of any court-ordered population cap."[4]

Section 2 of AB 32 consists of a handful of statutes that regulate anyone seeking to operate a private detention facility in California.  AB 32 § 2.  Most notably, California Penal Code section 9501 states, "Except as otherwise provided in this title, a person shall not operate a private detention facility within the state." A "detention facility" is defined as "any facility in which persons are incarcerated or otherwise involuntarily confined for purposes of execution of a punitive sentence imposed by a court or detention pending a trial, hearing, or other judicial or administrative proceeding."  Cal. Penal Code § 9500(a).  A "private detention facility" is defined as "a detention facility that is operated by a private, nongovernmental, for-profit entity, and operating pursuant to a contract or agreement with a governmental entity."  Cal. Penal Code § 9500(b).

---

[4] Although it is not directly relevant to the pending motions, subdivision (e) of section 5003.1 further provides that "[a]fter January 1, 2028, a state prison inmate or other person under the jurisdiction of the department shall not be incarcerated in a private, for-profit prison facility."

Section 9502 sets forth certain exceptions to the prohibition of private detention facilities, identifying seven types of facilities to which AB 32 does not apply.  Cal. Penal Code § 9502.  These include, for example, certain facilities providing primarily medical, educational, and juvenile care services.  *Id.* § 9502 (a)-(g).

Finally, AB 32 does not apply to any privately owned property that is leased and operated by CDCR or a county sheriff or other law enforcement agency.  Cal. Penal Code § 9503.  Nor does it apply to persons operating detention facilities pursuant to contracts entered prior to January 1, 2020, not including "any extensions made to or authorized by that contract."  *Id.* § 9505(a).

Section 3 of AB 32 provides that the act's provisions are severable and that if any provision of the act is held invalid, that shall not invalidate any other provision that can still be given effect.  AB 32, § 3.

## II.   RELEVANT FEDERAL IMMIGRATION DETENTION STATUTES

The Immigration and Nationality Act (INA) in Title 8 of the United States Code is the primary law governing immigration and related matters.  Aside from its general delegation of authority to detain immigrants (*see* 8 U.S.C. §§ 1226, 1231), the INA contains few provisions related to the actual operation of immigration detention facilities, i.e., *how* immigrants are housed.  These include sections 1231 and 1103 of Title 8.

Section 1231 governs when the federal government may construct and operate new detention facilities, providing "[w]hen United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General may expend … amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities … necessary for detention."  8 U.S.C. § 1231(g)(1).

Section 1103 authorizes the federal government "to enter into a cooperative agreement with any State" for construction related to housing immigration detainees in state facilities. *Id.* § 1103(a)(11)(B).

Neither section 1231, 1103, nor any other provision in the INA contemplates immigration detention facilities operated by private companies.

The INA does include provisions governing who may perform immigration-related duties. Generally, the INA authorizes the Secretary of the Department of Homeland Security (DHS) to delegate Title 8 powers to any employee of DHS or other federal agency with the consent of the agency head. 8 U.S.C. § 1103(a)(4), (6); 8 C.F.R. § 2.1. It does not authorize the Secretary to delegate Title 8 duties to private citizens. *See* 8 U.S.C. § 1103(a). In addition, the regulations promulgated under the INA specifically designate particular federal employees to perform specified immigration functions, including detention. 8 C.F.R. § 287.5; *id.* § 287.5(c)(6). Those employees must complete specialized training. 8 C.F.R. § 287.5; *see also* 8 C.F.R. § 287.1(g) (defining mandatory training). The only exception to these requirements is the delegation of certain immigration-enforcement duties to state officials pursuant to an agreement, and even then only "to the extent consistent with State and local law," and under the U.S. Attorney General's "direction and supervision." 8 U.S.C. § 1357(g)(1), (3); *see also Arizona v. United States*, 567 U.S. 387, 408-09 (2012) ("Federal law specifies limited circumstances in which state officers may perform the functions of an immigration officer"). There is no similar exception permitting private persons to act as immigration officials.

## III. RELEVANT FEDERAL LAW RELATED TO U.S. MARSHAL SERVICE DETENTION FACILITIES

Federal laws relating to the detention of federal prisoners are primarily set forth in Title 18 of the United States Code.

5

Title 18 authorizes the U.S. Marshal Service (USMS) to contract with private detention facility operators only by "designat[ing] districts that need additional support from private detention entities…." 18 U.S.C. § 4013(c)(1). Congress has enumerated several express restrictions on these contractors. *Id.* § 4013(c)(2). Among other things, the contractors must "comply with all applicable State and local laws and regulations." *Id.* § 4013(c)(2)(C). As explained by the author of the relevant bill amending section 4013, that provision "permit[s] the Marshals Service to enter into contracts only with private jails that meet strict standards designed to protect public safety." 136 Cong. Rec. S17595-01, S17596, 1990 WL 168469 (Oct. 27, 1990) (statement of Sen. Kohl).

## APPLICABLE LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff must establish (a) "that he is likely to succeed on the merits;" (b) "that he is likely to suffer irreparable harm in the absence of preliminary relief;" (c) "that the balance of equities tips in his favor;" and (d) "that an injunction is in the public interest." *Id.* at 20. A plaintiff's burden is particularly heavy in cases seeking to enjoin state statutes, because "a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992) ("[A] strong factual record is necessary").

## ARGUMENT

### I. PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS

Plaintiff's Motion for Preliminary Injunction should be denied because Plaintiff has failed to and cannot show that it is likely to succeed on the merits of its claims. AB 32 does not violate intergovernmental immunity principles and it is not preempted by federal law.

### A.   AB 32 Does Not Violate Governmental Immunity Principles

Under the Supremacy Clause, a state may not "regulate[] the United States directly or discriminate[] against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion).  While the Supreme Court, at one time, invalidated a state regulation that made "it more costly for the Government to do its business," the Court has since recognized that this "view has been thoroughly repudiated." *Id.* at 434.  Instead, the Court's "modern-day treatment of the intergovernmental immunity doctrine has been marked by restraint[.]" *In re Nat'l Security Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892, 903 (N.D. Cal. 2007).  The Court has taken "a functional approach to claims of intergovernmental immunity, accommodating of the full range of each sovereign's legislative authority and respectful of the primary role of Congress in resolving conflicts between the National and State Governments." *North Dakota*, 495 U.S. at 435.  For this reason, the notable majority of modern cases have involved claims alleging impermissible targeting of and discrimination against the federal government.  *See, e.g.*, *United States v. California*, 921 F.3d 865, 882-85 (9th Cir. 2019) (*petition for cert. filed*) (state law alleged to impose more burdensome inspection requirements on facilities housing immigration detainees than facilities housing state prisoners); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839-43 (9th Cir. 2014) (state law imposing stricter cleanup standards on a single federal facility than on similar state facilities); *United States v. City of Arcata*, 629 F.3d 986, 991-92 (9th Cir. 2010) (local ordinance restricting speech of federal employees, and no one else).  In any event, as explained below, AB 32 neither directly regulates nor discriminates against the federal government.

### 1.   AB 32 Does Not Directly Regulate the Federal Government

AB 32 does not directly regulate the federal government.  It is a law of neutral application that applies to private actors.  In the interest of protecting the health and

7

safety of the public, AB 32 regulates any "person" within the State of California by forbidding them from operating private detention facilities.  *See* Cal. Penal Code § 9501 ("[a] *person* shall not operate a private detention facility within the state" (emphasis added)).  This does not amount to a direct regulation of the federal government.  Rather, it is a regulation of private persons in California, such as its citizens and residents, and those persons doing business here.

While AB 32 may tangentially affect the federal government—to the extent the federal government might want to arrange for the private operation of certain detention facilities—such an incidental impact is not a *direct* regulation of the federal government.  Under AB 32, the federal government retains the ability itself to operate any detention facility in California.  *Cf. United States v. Arcata*, 629 F.3d 986 (9th Cir. 2010) (ordinance targeting military recruiters).  And AB 32 allows federal officers to operate such detention facilities as they see fit, in accordance with applicable federal laws, whether on federal land or private land.[5]  *See* Cal. Penal Code §§ 9501-03.

The doctrine of intergovernmental immunity does not insulate the federal government or those it seeks to do business with from any impact whatsoever from a state regulation of neutral applicability.  *See North Dakota*, 495 U.S. at 435 (plurality) ("Whatever burdens are imposed on the Federal Government by a neutral state law regulating its suppliers are but the normal incidents of the organization within the same territory of two governments."); *id.* at 434 (rejecting view that any regulation that made "it more costly for the Government to do its business" was unconstitutional).  AB 32 does not directly regulate the federal government.

---

[5] Though Plaintiff emphasizes a line of cases involving the direct regulation of federal property, *see* Pl. Br. at 22 (citing e.g. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988), *Public Utilities Comm'n. of Cal. v. United States*, 355 U.S. 534 (1958)), this line of cases is of limited applicability here because nearly all of the detention facilities operated by Plaintiff are privately or locally owned.  *See* Decl. of Amber Martin, ECF No. 15-3, ¶¶ 5, 13, 16, 22, 27, 33, 38.

8

Plaintiff analogizes to *Boeing* to support its argument that regulation of a federal contractor may constitute direct regulation of the federal government itself. Pl. Br. at 23-24 (citing *Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014)). However, unlike here, in *Boeing* there was no question that the relevant state law directly regulated the federal government.  Shortly after World War II, the federal government began nuclear testing at Santa Susana Field Laboratory in Southern California, causing radioactive contamination.  *Id.* at 834-35.  In 2007, the State of California enacted SB 990, which required the "responsible party" to perform environmental cleanup at Santa Susana according to more stringent standards than those generally applicable within the state.[6]  *Id.* at 837.  In *Boeing*, the Ninth Circuit held that the federal government (specifically, the U.S. Department of Energy), was the "responsible party" under SB 990, not contractor Boeing.  *Id.* at 839.  In other words, the law required the *Department of Energy* to clean up the site under stricter standards.  Because SB 990 specifically obligated the federal government to act, the law impermissibly directly regulated the federal government.  *See id.*  Those obligations existed regardless of whether the federal government chose to outsource the work to a contractor and regardless of any contract terms that were inconsistent with the cleanup standards of SB 990.  In contrast here, AB 32 does not directly regulate or obligate the federal government in any way because it does not forbid it from operating detention facilities in the state.

Finally, Plaintiff suggests that AB 32 is a direct regulation of the federal government because of the number of private facilities that would allegedly be forced close.  Pl. Br. at 24-25.  Again, under *North Dakota*, a burden on the federal government that arises from a state law of neutral application does not violate

_____

[6] The Ninth Circuit recognized that rather than setting a neutral rule applicable throughout the State, the law mandated "more stringent cleanup procedures, not generally applicable within the state, to a particular site [Santa Susana]," and only to that site.  *Id.* at 836.  This illustrates how the issue of "discrimination" often features prominently in any governmental immunity analysis, even in the context of a "direct regulation" claim.  *See also id.* at 839.

9

1   intergovernmental immunity.  *North Dakota*, 495 U.S. at 435.  Rather, the issue of

2   an alleged burden is properly analyzed within the framework of conflict or obstacle

3   preemption.  Defendants therefore address that issue below.  *See* Argument section

4   I(B), *infra*.

5       **2.    AB 32 Does Not Discriminate Against the Federal**
        **Government**

6

7           **a.    AB 32 does not treat private companies that contract**
                **with the federal government worse than private**
                **companies that contract with state or local**

8               **governments**

9       AB 32 also does not discriminate against the "Federal Government or those

10  with whom it deals."  *North Dakota*, 495 U.S. at 437 (plurality).

11      "[A] state does not discriminate against the Federal Government and those

12  with whom it deals unless it treats someone else better than it treats them."

13  *California*, 921 F.3d at 881 (internal citation omitted).  The Supreme Court "has

14  required that the regulation be one that is imposed on some basis unrelated to the

15  object's status as a Government contractor or supplier, that is, that it be imposed

16  equally on other similarly situated constituents of the State."  *North Dakota*, 495

17  U.S. at 438; *see Boeing*, 768 F.3d at 843; *California*, 921 F.3d at 882.

18      For example, in *Boeing*, the court determined that SB 990 discriminated

19  against the United States and its contractor because it "applie[d] more stringent

20  cleanup standards [to the Santa Susana site] than generally applicable state

21  environmental laws."  *Boeing*, 768 F.3d at 843.  And in *California*, the court

22  recognized that a state law might be discriminatory if it applied more stringent

23  inspection requirements to facilities housing immigration detainees than to similar

24  facilities housing state criminal detainees.  *California*, 921 F.3d at 882.

25      AB 32 does not treat private companies that contract with the federal

26  government worse than private companies that contract with state or local

27  governments.  AB 32 prohibits *anyone* from operating a private detention facility in

28  California.  Cal. Penal Code § 9501.  This even-handed prohibition is not

10

1  discriminatory against either federal contractors or the federal government itself.  In

2  fact, AB 32 imposes direct restrictions on CDCR that it does not impose on the

3  federal or local governments.  Cal. Pen. Code § 5003.1.

4       Nor does AB 32 single out federal contractors based solely on their "status as

5  a Government contractor or supplier."  *North Dakota*, 495 U.S. at 438.  Unlike in

6  *Boeing*, where the State targeted the Department of Energy with uniquely

7  burdensome regulation (thereby uniquely impacting Boeing as DOE's contractor

8  for the cleanup), *see Boeing*, 768 F.3d at 837, AB 32 does not impose more

9  stringent requirements on federal contractors than are imposed on similarly situated

10  state contractors.  AB 32 prohibits anyone from operating a private detention center

11  for any governmental entity.  Such private prison contractors are being regulated

12  because of their status as operators of private prisons in general, not because of

13  their status as private prison operators for the federal government in particular.

14          **b.    AB 32's exceptions are not discriminatory**

15       Plaintiff also contends that AB 32's statutory exceptions render it

16  discriminatory.  Pl. Br. 27.  This is incorrect.

17       Several of AB 32's exceptions, on their face, are equally available to federal,

18  state, *and* local government contractors.  *See* Cal. Penal Code §§ 9502(c)

19  ("educational, vocational, medical, or other ancillary services" to federal, state, or

20  local inmates), 9503 (privately owned or leased facilities operated by a government

21  agency), 9505(a) (existing contracts).

22       Plaintiff takes issue with certain exceptions in California Penal Code section

23  9502 to AB 32's general prohibition of private detention facilities, arguing that

24  these exceptions describe only state detention activities.  Pl. Br. at 27.  Even

25  assuming that is true, however, such a situation does not amount to discrimination

26  resulting from AB 32.  It simply reflects the reality that "there are no federal

27  contractors analogous to the state contractors who benefit from" these exceptions.

28  *United States v. Nye Cnty.*, 178 F.3d 1080, 1088 (9th Cir. 1999) (tax exemption for

11

1   state universities held not discriminatory where no federally-run universities existed

2   in the state).  In other words, the state and federal governments themselves are *not*

3   "similarly situated" to the extent the State of California happens to provide

4   additional services that do not implicate the same health and safety concerns

5   addressed in AB 32.  *Dawson v. Steager*, 139 S. Ct. 698, 705 (2019).

6       AB 32 regulates private "detention facilit[ies]" "in which persons are

7   incarcerated or otherwise involuntarily confined for purposes of execution of a

8   punitive sentence imposed by a court or detention pending a trial, hearing, or other

9   judicial or administrative proceeding."  Cal. Penal Code § 9500(a).  Private prisons

10   and immigration detention facilities, "in which persons are incarcerated or

11   otherwise involuntarily confined" for criminal or administrative proceedings, are

12   quite different than the facilities covered by the exceptions about which Plaintiff

13   complains:  private children's schools (Cal. Penal Code § 9502(e)), other non-

14   punitive environments for children (Cal. Penal Code § 9502(a)), grocery stores

15   (Cal. Penal Code § 9502(g)), nursing homes (Cal. Penal Code § 9502(d)), places for

16   the mentally ill (Cal. Penal Code § 9502(b)), and medical quarantine facilities (Cal.

17   Penal Code § 9502(f)).  Any disparate treatment between contractors operating

18   these facilities and private prison and detention center operators is justified by the

19   significant differences between the types of private contractors and facilities.  *See*

20   *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 815-16 (1989) (describing how

21   disparate treatment between "those who deal with one sovereign" and "those who

22   deal with the other" may be justified if there are "significant differences between

23   the two classes") (alterations and internal quotation marks omitted).  AB 32 permits

24   private contractors to provide services to federal, state, or local governments on

25   equal terms.

26       Finally, Plaintiff argues that the exception in California Penal Code section

27   9505, subsection (b) (and reflected in section 5003.1), makes AB 32 discriminatory.

28   Pl. Br. at 27.  This subsection permits the State of California to "renew[]" a contract

12

1  with a private detention facility "pursuant to subdivision (e) of Section 5003.1,"

2  which in turn provides that CDCR "may renew or extend a contract with a private,

3  for-profit prison facility to provide housing for state prison inmates in order to

4  comply with the requirements of any court-ordered population cap," Cal. Penal

5  Code § 5003.1(e).

6       Subsection (b) does not create an exception generally related to overcrowding

7  in California's prisons; it accommodates compliance with a particular court order

8  currently in place.  A federal three-judge court has been supervising California's

9  prison system for years.  *See generally Brown v. Plata*, 563 U.S. 493 (2011).  One

10  remedy ordered by the three-judge court was a population cap of 137.5% of design

11  capacity.  *Id.* at 539.  Complying with the court order is an ongoing obligation of

12  California's Department of Corrections and Rehabilitation.[7]

13       Neither the federal government nor local governments are subject to similar

14  litigation.  Accordingly, the federal court's overcrowding order is a constraint that

15  makes California differently situated to the federal government or local

16  governments.  *See Davis*, 489 U.S. at 815-16.  Rather than being discriminatory,

17  this provision simply recognizes the reality that AB 32 must yield to the orders of a

18  federal court that is actively overseeing the population size of California's prisons.

19       Moreover, this exception's scope is limited.  First, the exception applies only

20  to contract "renew[als]," and is therefore limited in time.  Cal. Penal Code

21  § 9505(b).  Second, the exception is available only to the extent necessary to meet

22  the court-ordered population cap, *id.* § 5003.1(e), and even then only until January

23  1, 2028, *id.* § 5003.1(c).  California is making all efforts to comply with the

24  population order, and it must be presumed that California will continue to do so in

25  good faith.  *See Red Top Mercury Mines, Inc. v. United States*, 887 F.2d 198, 202-

26  03 (9th Cir. 1989) ("There is a presumption of regularity in the performance of their

27  duties by government officials").  The provision in AB 32 is a temporary bridge

28  ───────────────
    [7] *See generally* https://www.cdcr.ca.gov/research/population-reports-2/.

1   that enables California to comply with an existing federal court order while it

2   transitions its inmate population away from private operators, not a permanent,

3   discriminatory loophole for California.

4       For all of these reasons, AB 32 does not violate intergovernmental immunity.

5   **B.   AB 32 Is Not Preempted by Federal Law**

6       "Federal preemption occurs when: (1) Congress enacts a statute that explicitly

7   pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal

8   law occupies a legislative field to such an extent that it is reasonable to conclude

9   that Congress left no room for state regulation in that field." *CTIA - The Wireless*

10  *Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 849 (9th Cir. 2019).  The second

11  category is often referred to as conflict (or obstacle) preemption.  Plaintiff appears

12  to allege this form of preemption.  Pl. Br. at 29.

13      Any preemption inquiry is "guided by two cornerstones."  *Wyeth v. Levine*,

14  555 U.S. 555, 565 (2009).  "First, the purpose of Congress is the ultimate

15  touchstone in every pre-emption case."  *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518

16  U.S. 470, 485 (1996).  "Congress' intent, of course, primarily is discerned from the

17  language of the pre-emption statute and the 'statutory framework' surrounding it."

18  *Medtronic*, 518 U.S. at 486 (quoting *Gade v. National Solid Wastes Management*

19  *Ass'n*, 505 U.S. 88, 111, 112 (1992) (Kennedy, J., concurring in part and

20  concurring in judgment)).

21      Second, there is an assumption that the historic police powers of the state have

22  not been superseded unless that was the "clear and manifest purpose of Congress."

23  *Wyeth*, 555 U.S. at 565; *see also Knox v. Brnovich*, 907 F.3d 1167, 1173-74 (9th

24  Cir. 2018).  Thus, "[s]ilence, without more, does not preempt."  *Chinatown*

25  *Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1143 (9th Cir. 2015).

26      California possesses the historic police power "to ensure the health and

27  welfare of inmates and detainees in facilities within its borders."  *See California*,

28  921 F.3d at 885-86; *Medtronic*, 518 U.S. at 475 ("States traditionally have had

14

1  great latitude under their police powers to legislate as to the protection of the lives,

2  limbs, health, comfort, and quiet of all persons" (internal quotation marks

3  omitted)); *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 719

4  (1985) ("[T]he regulation of health and safety matters is primarily, and historically,

5  a matter of local concern"); *see also Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104

6  (9th Cir. 2016) ("[W]hile the identity theft laws certainly have effects in the area of

7  immigration, the text of the laws regulate for the health and safety of the people of

8  Arizona").

9      Through AB 32, the California Legislature exercised its historic police power

10  to protect the health and safety of detainees within the state.  Based on the evidence

11  before it, the Legislature determined that privately-operated detention facilities pose

12  an unacceptable danger to the detainees, and the Legislature therefore barred

13  anyone from operating such facilities.  Thus, Plaintiff would have to show that it

14  was Congress's "clear and manifest purpose" to preempt AB 32.[8]  As explained

15  below, because Plaintiff has not and cannot show this, conflict preemption does not

16  apply to AB 32.

17          **1.    Congress Did Not Clearly and Manifestly Intend to
                    Preempt AB 32 Through Federal Immigration Law**

18

19      "Conflict preemption arises either when compliance with both federal and

20  state regulations is a physical impossibility . . . or when state law stands as an

21      [8] Although Plaintiff argues that AB 32 is not an exercise of historic police
    powers merely because it is because it is "immigration-related," Pl. Br. at 30, none

22  of Plaintiff's cited cases address what does or does not constitute a "historic police
    power" for the purposes of the requirement of a "clear and manifest" Congressional

23  purpose to preempt.  *See* Pl. Br. at 30.  Plaintiff instead cites to cases discussing
    whether field preemption (as opposed to conflict preemption) applies to state laws,

24  a wholly different analysis.  *Id.*  Plaintiff does not appear to argue that AB 32 is
    field preempted.  In any event, the Supreme Court has made clear that not "every

25  state enactment which in any way deals with aliens" is a regulation of immigration
    and thus per se preempted.  *DeCanas v. Bica*, 424 U.S. 351, 354–55 (1976)

26  (*superseded on other grounds by statute*) (collecting cases in upholding state laws
    related to immigrants).  Rather, the exclusive federal power to regulate immigration

27  is "essentially a determination of who should or should not be admitted into the
    country, and the conditions under which a legal entrant may remain [in the

28  country]." *Id.* at 355.  AB 32 does not touch on this exclusive federal power.

1   obstacle to the accomplishment and execution of the full purposes and objectives of

2   Congress." *CTIA*, 928 F.3d at 849 (internal quotation omitted); *see also California*,

3   921 F.3d at 879 ("To determine whether obstacle preemption exists, the Supreme

4   Court has instructed that we employ our judgment, to be informed by examining the

5   federal statute as a whole and identifying its purpose and intended effects" (internal

6   quotation omitted)).

7        The conflict preemption analysis "does not justify a freewheeling judicial

8   inquiry into whether a state statute is in tension with federal objectives; such an

9   endeavor would undercut the principle that it is Congress rather than the courts that

10  preempts state law." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607

11  (2011) (plurality opinion) (internal quotation omitted); *accord United States v. Cal.*,

12  921 F.3d at 879.  "[E]vidence of pre-emptive purpose, whether express or implied,

13  must therefore be sought in the text and structure of the statute at issue." *Virginia*

14  *Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1907 (2019).

15       Federal immigration law does not conflict preempt AB 32, because there is no

16  "clear and manifest" intent to do so.  First, it is possible to comply with both federal

17  immigration law and AB 32; federal immigration law does not compel private

18  companies to operate immigration detention facilities.

19       Second, AB 32 poses no obstacle to federal immigration law because

20  Congress did not clearly and manifestly intend for immigration detention facilities

21  to be operated by private companies.

22       Plaintiff identifies only one statute—8 U.S.C. section 1231(g)(1)—that

23  purportedly conflict preempts AB 32.  That statute and the "statutory framework

24  surrounding it," *Medtronic*, 518 U.S. at 486, evince no clear and manifest

25  Congressional intent for the federal government to utilize private immigration

26  detention facilities.  Rather, section 1231(g)(1), together with 8 U.S.C. section

27  1103(a)(11), sets forth a different scheme to address the limited capacity of existing

28  immigration detention centers.  The federal government must use available existing

16

1   facilities, 8 U.S.C. § 1231(g)(1), rent out and operate other facilities, *id.*, construct

2   new facilities, *id.*, or enter into an agreement with *states* to operate facilities, *id.*

3   § 1103(a)(11).  Congress therefore contemplated that only the federal government

4   and *states* would operate these facilities.[9]  Plaintiff has not pointed to any other

5   statutes or promulgated regulations that diverge from or supplement these

6   instructions.  Thus, in section 1231(g)(1), Congress has expressed not only a

7   general intent for the federal government to house immigration detainees, but a

8   specific intent on how federal agencies should do so.  AB 32 poses no obstacle to

9   that specific intent, which is the dispositive issue for purposes of conflict

10  preemption.

11       The legal limitations on who may act as an immigration detention officer

12  confirm the lack of clear and manifest Congressional intent to utilize private

13  immigration detention facilities.  The functions of immigration detention officers

14  may be performed only by federal and state employees who have received

15  specialized training and are under the direction and supervision of the U.S.

16  Attorney General.  8 C.F.R. § 287.5; 8 C.F.R. § 287.5(c)(6); *see also Arizona v.*

17  *United States*, 567 U.S. 387, 408-09 (2012).  Even then, state officers may act as

18  immigration detention officers only pursuant to a written agreement and "to the

19  extent consistent with State and local law."  8 U.S.C. § 1357(g)(1).  There is no

20  similar exception permitting private persons to act as immigration detention

21  officials.

22       Plaintiff concedes that the detainee facility options listed in 8 U.S.C. section

23  1231(g) reflect Congress' intent for how immigration detainees should be housed.

24  Pl. Br. at 32-33.  However, Plaintiff argues that, according the statute, Congress

25  _____

26  [9] Congress's provision for the *states* to operate some immigration detention
    facilities (and omission of operational details) actually suggests that Congress

27  expected state health and safety regulations to apply to those facilities.  This further
    undercuts the argument that a state's health and safety regulation of detention

28  facilities clearly and manifestly *conflicts* with Congressional intent here.

intended that construction of new facilities would be the "last resort," even after contracting with private facility operators. *Id.* at 33. This is not an accurate interpretation. Nowhere does the statute identify private facilities as a "resort" that Congress contemplated. *See* 8 U.S.C. § 1231(g). The provision requiring the federal government to "lease" a facility rather than construct one does not authorize the government to contract for a privately-operated detention facility. Rather, section 1231(g) is concerned with inadequate bed space, and the reference to a "lease" refers to the federal government leasing a facility *from* another entity and the federal government operating that facility itself.

Next, Plaintiff cites a number of cases in an attempt to demonstrate Congressional intent for federal agencies to utilize private immigration detention facilities. None of these cases support Plaintiff's preemption arguments.

In particular, *Committee of Central American Refugees* did not involve any claim or analysis of preemption. *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1435 (9th Cir. 1986). In that case, immigration detainees alleged that their transfer from one detention facility to another violated due process. *Id.* The Ninth Circuit merely ruled that the detainees had failed to show that their transfer violated due process. *Id.* at 1440-41.

Plaintiff also cites *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 368-70 (2000). There, Congress had enacted detailed provisions giving the President authority to impose and remove economic sanctions against Burma.[10] The Court found that the federal law conflict preempted a separate trade ban related to Burma imposed by Massachusetts, reasoning that Congress had clearly intended for the President to have exclusive authority to impose a "calibrated" scheme of economic pressure on Burma. *Id.* at 376-78. Here, in contrast to the situation in *Crosby*, section 1231 provides instructions on how the U.S. Attorney General is to

---

[10] This brief uses the name Burma rather than Myanmar, because that is the name used by the Supreme Court in its opinion. *See Crosby*, 530 U.S. at 366, n. 1.

"arrange" for immigration detention facilities.  8 U.S.C § 1231(g)(1).  Those instructions simply do not contemplate immigration detention facilities operated by private companies.  And nothing about those instructions reveal a clear and manifest Congressional intent for those immigration detention facilities to be exempt from state or local regulatory constraints.  *Compare* 8 U.S.C § 1231(g)(1) (listing options for detention facilities that do not include privately-operated facilities) *with* 18 U.S.C. § 4013(c)(1) (expressly allowing certain USMS detention facilities to be operated by private contractors, subject to state regulation).  Unlike the circumstances in *Crosby*, AB 32 does *not* undermine any "plenitude of Executive authority."  *Crosby*, 530 U.S. at 376.

The Ninth Circuit's decision in *Pittsburg* is also inapplicable because that case involved a "clear" and direct conflict between federal and state laws.  *See United States v. City of Pittsburg, Cal.*, 661 F.2d 783, 785 (9th Cir. 1981).  In *Pittsburg*, state law prohibited mail carriers from crossing lawns without the owner's express consent, whereas federal law "authorizes postal carriers to cross lawns unless the owner objects."  *Id.*  Here, AB 32's prohibition on persons within California operating private immigration detention facilities poses no such direct conflict with the U.S. Attorney General's general responsibility to arrange for immigration detention in federally owned, rented, or newly constructed facilities. 8 U.S.C. § 1231(g)(1).

Plaintiff finally argues that AB 32 is conflict preempted because it impedes the government's ability to contract.  This argument fails because Plaintiff has not identified any statute or regulation related to government contracting with which AB 32 purportedly conflicts.  *See Kansas v. Garcia*, No. 17-834, slip op. at 9 (U.S. 2020) ("In all cases, the federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress").  "There is no federal preemption *in vacuo* without a constitutional text, federal statute, or treaty made under the authority of the United States."  *Id.*  In

19

*Gartrell,* the Ninth Circuit ruled that specific federal construction contracting regulations conflict preempted a state licensing law because the state requirements overlapped with the federal criteria for assessing contractors' experience and qualifications.  *Gartrell Construction Inc. v. Aubry*, 940 F.2d 437, 439 (9th Cir. 1991).  The states were therefore "effectively attempting to review the federal government's responsibility determination."  *Id.* at 439.  The same reasoning applied in *Student Loan Serving Alliance*, in which a state licensing law was preempted by federal regulations providing assessment criteria for loan servicer qualifications.  *Student Loan Serving Alliance v. District of Columbia*, 351 F. Supp. 3d 26, 62-63 (D.D.C. 2016).  Here, there are no federal regulations related to contracting that overlap, much less conflict, with AB 32's regulation of detention facility contractors.  Thus, there is no conflict with any federal contracting laws.

For all of these reasons, federal immigration law does not conflict preempt AB 32.

> ### 2.   Congress Did Not Clearly and Manifestly Intend to Preempt AB 32 Through Federal Criminal Law

Federal criminal detention law also does not conflict preempt AB 32. Congress did not clearly and manifestly intend to outsource its USMS facility operations to private contractors who would not be subject to state regulation.

Congress has expressly permitted private contractors to operate criminal detention facilities housing USMS detainees in specially designated districts.  *See* 18 U.S.C. § 4013(a), (c)(1); 28 U.S.C. § 530C.  *However*, Congress has also expressly made those contractors are subject to state regulation.  *Id.* § 4013(c)(2)(C).  The purpose of this limitation is to require contractors to "meet strict standards designed to protect public safety."  136 Cong. Rec. S17595-01, S17596, 1990 WL 168469 (Oct. 27, 1990) (statement of Sen. Kohl).  Congress' clear and manifest intent therefore was to permit states to enact health and safety

20

1  regulations applicable to private USMS detention facilities.  *See* 18 U.S.C. §

2  4013(c)(2)(C).

3       AB 32 is the kind of state regulation that section 4013(c)(2)(C) contemplates.

4  The law embodies the California Legislature's determination that private detention

5  facilities pose unacceptable safety risks to detainees.  AB 32's application to private

6  operators of detention facilities is therefore consistent, and does not clearly and

7  manifestly conflict, with Congress' intent.

8       Plaintiff suggests that AB 32 should be preempted as a policy matter.  Pl. Br.

9  at 36.  This is not a cognizable basis for preemption.  "[T]he possibility that federal

10  enforcement priorities might be upset is not enough to provide a basis for

11  preemption."  *Garcia*, slip op. at 19.  "The Supremacy Clause gives priority to 'the

12  Laws of the United States,' not the criminal law enforcement priorities or

13  preferences of federal officers."  *Id.* (quoting U.S. CONST. art. VI, cl. 2).  The

14  possible policy effects of AB 32 therefore cannot direct a finding of preemption.

15       For these reasons, AB 32 is not preempted by federal criminal detention law.

16  **II.   PLAINTIFF IS NOT OTHERWISE ENTITLED TO A PRELIMINARY
        INJUNCTION**

17

18       **A.   Plaintiff Fails to Demonstrate Irreparable Harm**

19       Plaintiff's motion should also be denied because it has failed to demonstrate

20  that Plaintiff "is likely to suffer irreparable harm in the absence of preliminary

21  relief."  *Winter*, 555 U.S. at 22.

22       To establish irreparable harm, a plaintiff must "demonstrate *immediate*

23  threatened injury."  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674

24  (9th Cir. 1988) (emphasis altered); *see id.* at 675 (examining whether harms were

25  "imminent or likely").  Plaintiff identifies no *imminent* harms that would support

26  issuance of a preliminary injunction "before a decision on the merits can be

27  rendered."  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016).

28

1    To protect legitimate contractual expectations, AB 32 contains an exception

2  for any private detention facility "that is operating pursuant to a valid contract with

3  a governmental entity that was in effect before January 1, 2020, for the duration of

4  that contract, not to include any extensions made to or authorized by that contract."

5  Cal. Penal Code § 9505(a).  If Plaintiff's factual allegations are true (including the

6  terms and validity of its contracts), then all of its contracts fall within this

7  exception, because the base contract periods (prior to any option exercise) do not

8  expire until late 2021, at the earliest.  *See* Pl. Br. 37-38.  AB 32 therefore does not

9  threaten Plaintiff with any imminent disruption to its operations.  This undercuts

10 any claim of immediate irreparable injury.

11   **B.    The Balance of Hardships and the Public Interest Weigh**
12   **Against Granting Preliminary Relief**

13   Even if AB 32 did imminently threaten harm to Plaintiff through the closure of

14 private detention facilities, which it does not, the balance of equities and public

15 interest weigh strongly against enjoining California's laws during the pendency of

16 litigation.  *Winter*, 555 U.S. at 22.

17   Preventing a violation of the Supremacy Clause serves the public interest.  *See*

18 *United States v. Arizona*, 641 F.3d 339, 345 (9th Cir. 2011), *aff'd in part, rev'd in*

19 *part and remanded*, 567 U.S. 387 (2012).  But, assuming AB 32 threatened

20 imminent injury, a preliminary injunction enjoining the enforcement of AB 32

21 would lead to significant, concrete harm to the public.  The California Legislature

22 determined (and the federal government has recognized) that private prisons are a

23 critical, ongoing public policy concern and that conditions in private facilities pose

24 a threat to detainee safety.  *See, e.g.,* OFFICE OF THE INSPECTOR GENERAL, U.S.

25 DEP'T OF JUSTICE, REVIEW OF THE FEDERAL BUREAU OF PRISONS' MONITORING OF

26 CONTRACT PRISONS (2016), *available at*

27 https://oig.justice.gov/reports/2016/e1606.pdf, at 14.  The California Legislature

28 adopted AB 32 to end this problem based on the same concerns that even the

22

federal government has expressed about private prison operators.  It would be inequitable and contrary to the public interest to block enforcement of the laws during the pendency of this litigation.

**III.  PLAINTIFF IS NOT ENTITLED TO A PERMANENT INJUNCTION**

In addition to its request for a preliminary injunction, Plaintiff requests a permanent injunction.  *See* Pl. Br. at 40 (citing *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1102 (9th Cir. 1998)).  While the Ninth Circuit in *Baby Tam* directed the entry of a permanent injunction, it did not create a new rule under which a district court may grant a permanent injunction at this preliminary stage, and Defendants are not aware of any other authority for such a rule.  The closest authority, Federal Rule of Civil Procedure 65(a)(2), permits the Court to "advance the trial on the merits and consolidate it with the [preliminary-injunction] hearing."  However, the Court should not employ Rule 65(a)(2) here because no party has requested it, and because there remains some uncertainty about the reach of AB 32's exceptions and any actual harm that Plaintiff might suffer as a result of AB 32.

**CONCLUSION**

For the reasons above, Plaintiff's Motion for a Preliminary Injunction should be denied.

1   Dated:  March 5, 2020                    Respectfully Submitted,

2                                            XAVIER BECERRA
                                             Attorney General of California
3                                            ANTHONY R. HAKL
                                             Supervising Deputy Attorney General
4                                            JOHN W. KILLEEN
                                             Deputy Attorney General
5

6

7                                            */s/ Gabrielle D. Boutin*
                                             GABRIELLE D. BOUTIN
8                                            Deputy Attorney General
                                             *Attorneys for Governor Gavin*
9                                            *Newsom and Attorney General Xavier*
                                             *Becerra, in their official capacities*
10
     SA2020100025
11   14500975.docx

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Motion for Preliminary Injunction (19-cv-2491-JLS-WVG)

# CERTIFICATE OF SERVICE

Case Name:  **The GEO Group, Inc. v. Gavin**          No.   **19CV2491 JLS WVG**
            **Newsom, et al**

I hereby certify that on <u>March 5, 2020,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>March 5, 2020,</u> at Sacramento, California.


<u>    Eileen A. Ennis    </u>          <u>                     </u>
Declarant                              Signature

SA2020100025
14498170.docx