Xavier Becerra
Attorney General of California
Anthony R. Hakl
Supervising Deputy Attorney General
Gabrielle D. Boutin
Deputy Attorney General
State Bar No. 267308
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-6053
  Fax: (916) 324-8835
  E-mail: Gabrielle.Boutin@doj.ca.gov
*Attorneys for Governor Gavin Newsom and
Attorney General Xavier Becerra, in their
official capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE GEO GROUP, INC.,** | Case No. 3:19-cv-2491-JLS-WVG |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT** |
| **v.** | |
| **GAVIN C. NEWSOM, in his official capacity as Governor of the State of California; XAVIER BECERRA, in his official capacity as Attorney General of the State of California,** | Date:        April 23, 2020<br>Time:        1:30 p.m.<br>Dept:        4D<br>Judge:       Hon. Janis L. Sammartino<br>Trial Date:  None set<br>Action Filed:    1/24/2020 |
| Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................. 1

Background .................................................................................................... 1

    I.     AB 32 ................................................................................................ 1

    II.    Relevant Federal Immigration Detention Statutes ................................ 4

    III.   Relevant Federal Law Related to U.S. Marshal Service Detention Facilities ............................................................................... 5

    IV.   Plaintiff's Complaint ........................................................................ 6

Legal Standard for Motion to Dismiss ........................................................ 6

Argument ...................................................................................................... 7

    I.     AB 32 Does Not Violate Governmental Immunity Principles ............. 7

          A.    AB 32 Does Not Directly Regulate the Federal Government ...................................................................... 8

          B.    AB 32 Does Not Discriminate Against the Federal Government ..................................................................... 10

               1.    AB 32 Does Not Treat Private Companies That Contract With the Federal Government Worse Than Private Companies That Contract With State or Local Governments ........................................... 10

               2.    AB 32's Exceptions are Not Discriminatory ................. 11

    II.    AB 32 Is Not Preempted by Federal Law ........................................... 14

               1.    Congress Did Not Clearly and Manifestly Intend to Preempt AB 32 Through Federal Immigration Law ...... 15

               2.    Congress Did Not Clearly and Manifestly Intend to Preempt AB 32 Through Federal Criminal Law ............ 20

Conclusion ................................................................................................. 21

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Arizona v. United States*
    567 U.S. 387 (2012) ...................................................................... 5, 17

5

6

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................ 6

7

8

*Boeing Co. v. Movassaghi*
    768 F.3d 832 (9th Cir. 2014) ............................................ 7, 9, 10, 11

9

*Brown v. Plata*
    563 U.S. 493 (2011) .......................................................................... 13

10

11

*Chamber of Commerce of U.S. v. Whiting*
    563 U.S. 582 (2011) .......................................................................... 16

12

13

*Chinatown Neighborhood Ass'n v. Harris*
    794 F.3d 1136 (9th Cir. 2015) .......................................................... 15

14

15

*Comm. of Cent. Am. Refugees v. INS*
    795 F.2d 1434 (9th Cir. 1986) .......................................................... 18

16

17

*Crosby v. National Foreign Trade Council*
    530 U.S. 363 (2000) .................................................................... 18, 19

18

19

*CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*
    928 F.3d 832 (9th Cir. 2019) ...................................................... 14, 15

20

21

*Davis v. Michigan Dep't of Treasury*
    489 U.S. 803 (1989) .................................................................... 12, 13

22

23

*Dawson v. Steager*
    139 S. Ct. 698 (2019) ........................................................................ 12

24

25

*Gade v. National Solid Wastes Management Ass'n*
    505 U.S. 88 (1992) ............................................................................ 14

26

27

*Gartrell Construction Inc. v. Aubry*
    940 F.2d 437 (9th Cir. 1991) ...................................................... 19, 20

28

ii

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

1
2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3
4

*Goodyear Atomic Corp. v. Miller*
 486 U.S. 174 (1988) ........................................................................8

5
6

*Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*
 471 U.S. 707 (1985) ......................................................................15

7
8

*In re Nat'l Security Agency Telecomms. Records Litig.*
 633 F. Supp. 2d 892 (N.D. Cal. 2007) ..........................................7

9

*Johnson v. Riverside Healthcare Sys., LP*
 534 F.3d 1116 (9th Cir. 2008) .......................................................7

10
11

*Kansas v. Garcia*
 No. 17-834, slip op. (U.S. 2020) ...........................................19, 21

12
13

*Knox v. Brnovich*
 907 F.3d 1167 (9th Cir. 2018) .....................................................15

14
15

*Lazy Y Ranch Ltd. v. Behrens*
 546 F.3d 580 (9th Cir. 2008) .........................................................7

16
17

*Medtronic, Inc. v. Lohr*
 518 U.S. 470 (1996) ..........................................................14, 15, 16

18
19

*N. Star Int'l v. Ariz. Corp. Comm'n*
 720 F.2d 578 (9th Cir. 1983) .........................................................6

20
21

*North Dakota v. United States*
 495 U.S. 423 (1990) ...............................................................*passim*

22

*Public Utilities Comm'n. of Cal. v. United States*
 355 U.S. 534 (1958) ........................................................................8

23
24

*Puente Arizona v. Arpaio*
 821 F.3d 1098 (9th Cir. 2016) .....................................................15

25
26

*Red Top Mercury Mines, Inc. v. United States*
 887 F.2d 198 (9th Cir. 1989) .......................................................14

27
28

*Student Loan Serving Alliance v. District of Columbia*
 351 F. Supp. 3d 26 (D.D.C. 2016) ..............................................20

iii

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3
4
*United States v. California*
   921 F.3d 865 (9th Cir. 2019) ............................................................... 7, 10, 15, 16

5
6
*United States v. City of Arcata*
   629 F.3d 986 (9th Cir. 2010) .............................................................................. 7, 8

7
8
*United States v. City of Pittsburg, Cal.*
   661 F.2d 783 (9th Cir. 1981) ................................................................................ 19

9
10
*United States v. Nye Cnty.*
   178 F.3d 1080 (9th Cir. 1999) .............................................................................. 12

11
*Virginia Uranium, Inc. v. Warren*
   139 S. Ct. 1894 (2019) ......................................................................................... 16

12
13
*Wyeth v. Levine*
   555 U.S. 555 (2009) ........................................................................................ 14, 15

14
**STATUTES**

15
16
United States Code, Title 8
   § 1103 ................................................................................................................ 4, 5
   § 1103(a) .................................................................................................................. 5
   § 1103(a)(4) ............................................................................................................. 5
   § 1103(a)(6) ............................................................................................................. 5
   § 1103(a)(11) .................................................................................................... 16, 17
   § 1103(a)(11)(B) ...................................................................................................... 5
   § 1226 ...................................................................................................................... 4
   § 1231 ................................................................................................................... 4, 5
   § 1231(g)(1) .................................................................................................... *passim*
   § 1357(g)(1) ........................................................................................................... 17
   § 1357(g)(1) ............................................................................................................. 5
   § 1357(g)(3) ............................................................................................................. 5

17
18
19
20
21
22
23
24
United States Code, Title 18
   § 4013 ...................................................................................................................... 6
   § 4013(a), (c)(1) ..................................................................................................... 20
   § 4013(c)(1) ........................................................................................................ 6, 18
   § 4013(c)(2) ............................................................................................................. 6
   § 4013(c)(2)(C) ................................................................................................... 6, 20

25
26
27
28

iv

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

United States Code, Title 28

4

§ 530C .............................................................................................. 20

5

California Penal Code

6

§ 5003.1 ...................................................................... 3, 11, 13

§ 5003.1(a) .......................................................................... 3

7

§ 5003.1(b) .......................................................................... 3

§ 5003.1(c) ........................................................................ 14

8

§ 5003.1(e) .......................................................... 3, 13, 14

9

§ 9500 ................................................................................. 3

§ 9500(a) .................................................................... 3, 12

10

§ 9500(b) .............................................................................. 4

11

§ 9501 ..................................................................... 3, 8, 11

§§ 9501-03 ........................................................................... 8

12

§ 9502 ......................................................................... 4, 11

§ 9502(a) ............................................................................ 12

13

§ 9502 (a)-(g) .................................................................... 4

14

§ 9502(b) ............................................................................ 12

§§ 9502(c) .......................................................................... 11

15

§ 9502(d) ............................................................................ 12

16

§ 9502(e) ............................................................................ 12

§ 9502(f) ............................................................................. 12

17

§ 9502(g) ............................................................................ 12

18

§ 9503 ................................................................................... 4

§ 9505(a) .............................................................................. 4

19

§ 9505(b) ............................................................................ 13

20

§ 9505, subsec. (b) ........................................................... 13

21

**CONSTITUTIONAL PROVISIONS**

22

United States Constitution

23

Article VI, cl. 2 ............................................................. 21

24

**COURT RULES**

25

Federal Rules of Civil Procedure

26

Rule 12(b)(6) ..................................................................... 8

27

28

v

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

# TABLE OF AUTHORITIES
### (continued)

**Page**

**OTHER AUTHORITIES**

8 C.F.R.
  § 2.1 ............................................................................................................5
  § 287.1(g).................................................................................................5
  § 287.5 ...............................................................................................5, 17
  § 287.5(c)(6) .....................................................................................5, 17

136 Cong. Rec. S17595-01, S17596, 1990 WL 168469 (Oct. 27, 1990)............. 6, 20

AMERICAN CIVIL LIBERTIES UNION, BANKING ON BONDAGE: PRIVATE
  PRISONS AND MASS INCARCERATION (2011), available at
  https://www.aclu.org/banking-bondage-private-prisons-and-mass-
  incarceration; ..................................................................................................2

Assembly Bill 32 2019-2020 Reg. Sess. (Cal. 2019) .................................................1
  § 1 ............................................................................................................3
  § 2 .....................................................................................................3, 10
  § 3 ............................................................................................................4

https://www.cdcr.ca.gov/research/population-reports-2/ ........................................ 13

KARA GOTSCH & VINAY BASTI, THE SENTENCING PROJECT,
  CAPITALIZING ON MASS INCARCERATION: US GROWTH IN PRIVATE
  PRISONS (2018), available at
  https://www.sentencingproject.org/publications/capitalizing-on-
  mass-incarceration-u-s-growth-in-private-prisons/...............................................2

OFFICE OF THE INSPECTOR GENERAL, U.S. DEP'T OF JUSTICE, REVIEW
  OF THE FEDERAL BUREAU OF PRISONS' MONITORING OF CONTRACT
  PRISONS (2016), available at
  https://oig.justice.gov/reports/2016/e1606.pdf.......................................................2

TARA JOY, JUSTICE POLICY INSTITUTE, THE PROBLEM WITH PRIVATE
  PRISONS (2018), available at
  http://www.justicepolicy.org/news/12006; ...........................................................2

vi

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

1

2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

3   U.S. DEP'T OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL,

4      MEMORANDUM FOR THE ACTING DIRECTOR, FEDERAL BUREAU OF

       PRISONS FROM JEFFERSON B. SESSIONS III RE: RESCISSION OF

5      MEMORANDUM ON USE OF PRIVATE PRISONS (Feb. 21, 2017),

6      available at https://www.justice.gov/oip/foia-

       library/attorney_general_memorandum_advising_the_federal_bure

7      au_of_prisons_that_the_department_will_continue_to_use_private

8      _prisons.pdf/download ...........................................................................................2

9   U.S. DEP'T OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL,

10     MEMORANDUM FOR THE ACTING DIRECTOR, FEDERAL BUREAU OF

       PRISONS FROM SALLY Q. YATES RE: REDUCING OUR USE OF

11     PRIVATE PRISONS (Aug. 18, 2016), available at

12     https://www.justice.gov/OIP/FOIA-Library/davis/download ...............................2

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The California Legislature determined in 2019, based on ample evidence, that private prisons and detention facilities pose an unacceptable danger to detainees in California. Pursuant to its sovereign police powers to protect the safety and well-being of all Californians, the Legislature therefore enacted Assembly Bill 32 (AB 32) to generally prohibit private persons and entities from operating detention facilities in the state. Plaintiff The Geo Group filed this lawsuit, alleging that AB 32 violates the Federal Constitution's Supremacy Clause under principles of intergovernmental immunity and preemption.

Even accepting as true the factual allegations of the complaint, Plaintiff cannot state a claim upon which relief can be granted. The doctrine of intergovernmental immunity does not apply because AB 32 is a law of neutral applicability that neither directly regulates the federal government nor discriminates against it. Plaintiff's preemption allegations are equally unavailing. AB 32 does not regulate in a field that is exclusively the province of the federal government, and it does not conflict with any federal law. For these reasons, the Court should dismiss Plaintiff's Complaint without leave to amend.

## BACKGROUND

### I.   AB 32

AB 32 arose from the California Legislature's concerns about serious, documented harms to the safety and welfare of those detained in private detention facilities. *See* Defs.' Req. for Judicial Notice in Support of Opp'n to Mot. for Prelim. Inj. (RJN)[1] Ex. 1 at 4-5; RJN Ex. 2 at 2; RJN Ex. 3 at 1-2; RJN Ex. 4 at 1-9; RJN Ex. 5 at 6-8; RJN No. 6 at 4-5; *see also* Assem. Bill 32, 2019-2020 Reg. Sess. (Cal. 2019) (AB 32). The Legislature was not alone in these concerns, relying on a

---

[1] Concurrently, Defendants are filing a request for judicial notice in support of their opposition to the United States' motion for preliminary injunction. Defendants rely on the same request for judicial notice here.

1

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

number of reports and studies including a report by the U.S. Department of Justice Office of the Inspector General finding that federal private prisons are unsafe, lack transparency and accountability, create unfair and exploitive conditions for detainees, and prioritize profits over inmate rehabilitation and wellbeing. *See, e.g.*, RJN Ex. 1 at 4; RJN Ex. 4 at 7-8. [2]  In addition, the Legislature was aware that as recently as 2016, the U.S. Department of Justice (DOJ) announced a plan to end its use of private prisons, citing safety and security in the facilities as major reasons.[3] That decision was later reversed after a change in federal administration, although that change of course came with no explanation regarding the previously asserted safety and security concerns.[4]

When first introduced in the Legislature in 2018, AB 32 applied only to the California Department of Corrections and Rehabilitation (CDCR), prohibiting CDCR from contracting with any private, for-profit prison facility to house state prisoners. RJN Ex. 1 at 1-4. As it evolved, the bill was amended to more broadly

[2] *See also* OFFICE OF THE INSPECTOR GENERAL, U.S. DEP'T OF JUSTICE, REVIEW OF THE FEDERAL BUREAU OF PRISONS' MONITORING OF CONTRACT PRISONS (2016), available at https://oig.justice.gov/reports/2016/e1606.pdf, at 14 ("Contract Prisons Had More Frequent Incidents per Capita of Contraband Finds, Assaults, Uses of Force, Lockdowns, Guilty Findings on Inmate Discipline Charges, and Selected Categories of Grievances"); TARA JOY, JUSTICE POLICY INSTITUTE, THE PROBLEM WITH PRIVATE PRISONS (2018), available at http://www.justicepolicy.org/news/12006; AMERICAN CIVIL LIBERTIES UNION, BANKING ON BONDAGE: PRIVATE PRISONS AND MASS INCARCERATION (2011), available at https://www.aclu.org/banking-bondage-private-prisons-and-mass-incarceration; KARA GOTSCH & VINAY BASTI, THE SENTENCING PROJECT, CAPITALIZING ON MASS INCARCERATION: US GROWTH IN PRIVATE PRISONS (2018), available at https://www.sentencingproject.org/publications/capitalizing-on-mass-incarceration-u-s-growth-in-private-prisons/.

[3] U.S. DEP'T OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL, MEMORANDUM FOR THE ACTING DIRECTOR, FEDERAL BUREAU OF PRISONS FROM SALLY Q. YATES RE: REDUCING OUR USE OF PRIVATE PRISONS (Aug. 18, 2016), available at https://www.justice.gov/OIP/FOIA-Library/davis/download.

[4] U.S. DEP'T OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL, MEMORANDUM FOR THE ACTING DIRECTOR, FEDERAL BUREAU OF PRISONS FROM JEFFERSON B. SESSIONS III RE: RESCISSION OF MEMORANDUM ON USE OF PRIVATE PRISONS (Feb. 21, 2017), available at https://www.justice.gov/oip/foia-library/attorney_general_memorandum_advising_the_federal_bureau_of_prisons_that_the_department_will_continue_to_use_private_prisons.pdf/download.

prohibit anyone from operating a private detention facility in California. RJN Ex. 4 at 1, 4. As enacted in 2019, AB 32 encompasses any detention facility operated by a private, nongovernmental, for-profit entity, and operating pursuant to a contract or agreement with any local, state, or federal governmental entity. *See* AB 32, §§ 1, 2. Among others, these facilities include prisons and immigration detention facilities. *See* RJN Ex. 6 at 4-5; Cal. Pen Code § 9500.

AB 32 consists of three sections. Section 1 regulates the California Department of Corrections and Rehabilitation. AB 32 § 1. Specifically, as of January 1, 2020, Penal Code section 5003.1 prohibits the department from entering or renewing any "contract with a private, for-profit prison facility located in or outside of the state to provide housing for state prison inmates." Cal. Penal Code § 5003.1 (a), (b). Subdivision (e) of section 5003.1 provides that the department may, however, "renew or extend a contract with a private, for-profit prison facility to provide housing for state prison inmates in order to comply with the requirements of any court-ordered population cap."[5]

Section 2 of AB 32 consists of a handful of statutes that regulate anyone seeking to operate a private detention facility in California. AB 32 § 2. Most notably, California Penal Code section 9501 states, "Except as otherwise provided in this title, a person shall not operate a private detention facility within the state." A "detention facility" is defined as "any facility in which persons are incarcerated or otherwise involuntarily confined for purposes of execution of a punitive sentence imposed by a court or detention pending a trial, hearing, or other judicial or administrative proceeding." Cal. Penal Code § 9500(a). A "private detention facility" is defined as "a detention facility that is operated by a private,

---

[5] Although it is not directly relevant to the pending motions, subdivision (e) of section 5003.1 further provides that "[a]fter January 1, 2028, a state prison inmate or other person under the jurisdiction of the department shall not be incarcerated in a private, for-profit prison facility."

3

nongovernmental, for-profit entity, and operating pursuant to a contract or agreement with a governmental entity."  Cal. Penal Code § 9500(b).

Section 9502 sets forth certain exceptions to the prohibition of private detention facilities, identifying seven types of facilities to which AB 32 does not apply.  Cal. Penal Code § 9502.  These include, for example, certain facilities providing primarily medical, educational, and juvenile care services.  *Id.* § 9502 (a)-(g).

Finally, AB 32 does not apply to any privately owned property that is leased and operated by CDCR or a county sheriff or other law enforcement agency.  Cal. Penal Code § 9503.  Nor does it apply to persons operating detention facilities pursuant to contracts entered prior to January 1, 2020, not including "any extensions made to or authorized by that contract."  *Id.* § 9505(a).

Section 3 of AB 32 provides that the act's provisions are severable and that if any provision of the act is held invalid, that shall not invalidate any other provision that can still be given effect.  AB 32, § 3.

## II.   RELEVANT FEDERAL IMMIGRATION DETENTION STATUTES

The Immigration and Nationality Act (INA) in Title 8 of the United States Code is the primary law governing immigration and related matters.  Aside from its general delegation of authority to detain immigrants (*see* 8 U.S.C. §§ 1226, 1231), the INA contains few provisions related to the actual operation of immigration detention facilities, i.e., *how* immigrants are housed.  These include sections 1231 and 1103 of Title 8.

Section 1231 governs when the federal government may construct and operate new detention facilities, providing "[w]hen United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General may expend … amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities … necessary for detention."  8 U.S.C. § 1231(g)(1).

Section 1103 authorizes the federal government "to enter into a cooperative agreement with any State" for construction related to housing immigration detainees in state facilities. *Id.* § 1103(a)(11)(B).

Neither section 1231, 1103, nor any other provision in the INA contemplates immigration detention facilities operated by private companies.

The INA does include provisions governing who may perform immigration-related duties. Generally, the INA authorizes the Secretary of the Department of Homeland Security (DHS) to delegate Title 8 powers to any employee of DHS or other federal agency with the consent of the agency head. 8 U.S.C. § 1103(a)(4), (6); 8 C.F.R. § 2.1. It does not authorize the Secretary to delegate Title 8 duties to private citizens. *See* 8 U.S.C. § 1103(a). In addition, the regulations promulgated under the INA specifically designate particular federal employees to perform specified immigration functions, including detention. 8 C.F.R. § 287.5; *id.* § 287.5(c)(6). Those employees must complete specialized training. 8 C.F.R. § 287.5; *see also* 8 C.F.R. § 287.1(g) (defining mandatory training). The only exception to these requirements is the delegation of certain immigration-enforcement duties to state officials pursuant to an agreement, and even then only "to the extent consistent with State and local law," and under the U.S. Attorney General's "direction and supervision." 8 U.S.C. § 1357(g)(1), (3); *see also Arizona v. United States*, 567 U.S. 387, 408-09 (2012) ("Federal law specifies limited circumstances in which state officers may perform the functions of an immigration officer"). There is no similar exception permitting private persons to act as immigration officials.

## III. RELEVANT FEDERAL LAW RELATED TO U.S. MARSHAL SERVICE DETENTION FACILITIES

Federal laws relating to the detention of federal prisoners are primarily set forth in Title 18 of the United States Code.

5

Title 18 authorizes the U.S. Marshal Service (USMS) to contract with private detention facility operators only by "designat[ing] districts that need additional support from private detention entities…."  18 U.S.C. § 4013(c)(1).  Congress has enumerated several express restrictions on these contractors. *Id.* § 4013(c)(2). Among other things, the contractors must "comply with all applicable State and local laws and regulations."  *Id.* § 4013(c)(2)(C).  As explained by the author of the relevant bill amending section 4013, that provision "permit[s] the Marshals Service to enter into contracts only with private jails that meet strict standards designed to protect public safety."  136 Cong. Rec. S17595-01, S17596, 1990 WL 168469 (Oct. 27, 1990) (statement of Sen. Kohl).

## IV. PLAINTIFF'S COMPLAINT

Plaintiff filed its complaint on December 30, 2019.  *See* ECF No. 1. According to its complaint, Plaintiff currently contracts with the federal government as a private operator of detention facilities which house immigration detainees and USMS prisoners within California.  *See* Compl., at 12-14 (USMS), 19-22 (Immigration and Customs Enforcement Agency (ICE)).  Plaintiff alleges that by prohibiting private companies from operating detention facilities on behalf of any governmental entity, AB 32 violates the intergovernmental immunity aspect of the Supremacy Clause.  *See* Compl., at 25-26.  Plaintiff also alleges that AB 32 is preempted by federal law.  *See* Compl., at 26-28.

## LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

6

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

1   *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008)

2   (internal quotation omitted).  The court accepts as true all material allegations in the

3   complaint and construes them in the light most favorable to the plaintiff.  *Lazy Y*

4   *Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

5                                                        **ARGUMENT**

6   **I.     AB 32 DOES NOT VIOLATE GOVERNMENTAL IMMUNITY PRINCIPLES**

7            Under the Supremacy Clause, a state may not "regulate[] the United States

8   directly or discriminate[] against the Federal Government or those with whom it

9   deals."  *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality

10  opinion).  While the Supreme Court, at one time, invalidated a state regulation that

11  made "it more costly for the Government to do its business," the Court has since

12  recognized that this "view has been thoroughly repudiated."  *Id.* at 434.  Instead, the

13  Court's "modern-day treatment of the intergovernmental immunity doctrine has

14  been marked by restraint[.]"  *In re Nat'l Security Agency Telecomms. Records*

15  *Litig.*, 633 F. Supp. 2d 892, 903 (N.D. Cal. 2007).  The Court has taken "a

16  functional approach to claims of intergovernmental immunity, accommodating of

17  the full range of each sovereign's legislative authority and respectful of the primary

18  role of Congress in resolving conflicts between the National and State

19  Governments."  *North Dakota*, 495 U.S. at 435.  For this reason, the notable

20  majority of modern cases have involved claims alleging impermissible targeting of

21  and discrimination against the federal government.  *See, e.g.*, *United States v.*

22  *California*, 921 F.3d 865, 882-85 (9th Cir. 2019) (*petition for cert. filed*) (state law

23  alleged to impose more burdensome inspection requirements on facilities housing

24  immigration detainees than facilities housing state prisoners); *Boeing Co. v.*

25  *Movassaghi*, 768 F.3d 832, 839-43 (9th Cir. 2014) (state law imposing stricter

26  cleanup standards on a single federal facility than on similar state facilities); *United*

27  *States v. City of Arcata*, 629 F.3d 986, 991-92 (9th Cir. 2010) (local ordinance

28  restricting speech of federal employees, and no one else).  In any event, as

7

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

explained below, AB 32 neither directly regulates nor discriminates against the federal government.

### A.   AB 32 Does Not Directly Regulate the Federal Government

AB 32 does not directly regulate the federal government.  It is a law of neutral application that applies to private actors.  In the interest of protecting the health and safety of the public, AB 32 regulates any "person" within the State of California by forbidding them from operating private detention facilities.  *See* Cal. Penal Code § 9501 ("[a] *person* shall not operate a private detention facility within the state" (emphasis added)).  This does not amount to a direct regulation of the federal government.  Rather, it is a regulation of private persons in California, such as its citizens and residents, and those persons doing business here.

While AB 32 may tangentially affect the federal government—to the extent the federal government might want to arrange for the private operation of certain detention facilities—such an incidental impact is not a *direct* regulation of the federal government.  Under AB 32, the federal government here retains the ability itself to operate any detention facility in California.  *Cf. United States v. Arcata*, 629 F.3d 986 (9th Cir. 2010) (ordinance targeting military recruiters).  And AB 32 allows federal officers to operate such detention facilities as they see fit, in accordance with applicable federal laws, whether on federal land or private land.[6]  *See* Cal. Penal Code §§ 9501-03.

The doctrine of intergovernmental immunity does not insulate the federal government or those it seeks to do business with from any impact whatsoever from a state regulation of neutral applicability.  *See North Dakota*, 495 U.S. at 435 (plurality) ("Whatever burdens are imposed on the Federal Government by a neutral

---

[6] Though Plaintiff emphasizes a line of cases involving the direct regulation of federal property, *see* Pl. Br. at 22 (citing e.g. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988), *Public Utilities Comm'n. of Cal. v. United States*, 355 U.S. 534 (1958)), this line of cases is of limited applicability here because nearly all of the detention facilities operated by Plaintiff are privately or locally owned.  *See* Decl. of Amber Martin, ECF No. 15-3, ¶¶ 5, 13, 16, 22, 27, 33, 38.

state law regulating its suppliers are but the normal incidents of the organization within the same territory of two governments."); *id.* at 434 (rejecting view that any regulation that made "it more costly for the Government to do its business" was unconstitutional).  AB 32 does not directly regulate the federal government.

*Boeing* illustrates how AB 32 is not a direct regulation of the federal government.  *See Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014).  Shortly after World War II, the federal government began nuclear testing at Santa Susana Field Laboratory in Southern California, causing radioactive contamination.  *Id.* at 834-35.  In 2007, the State of California enacted SB 990, which required the "responsible party" to perform environmental cleanup at Santa Susana according to more stringent standards than those generally applicable within the state.[7]  *Id.* at 837.  The Ninth Circuit held that the federal government (specifically, the U.S. Department of Energy), was the "responsible party" under SB 990, not contractor Boeing.  *Id.* at 839.  In other words, the law required the *Department of Energy* to clean up the site under stricter standards.  Because SB 990 specifically obligated the federal government to act, the law impermissibly directly regulated the federal government.  *See id.*  Those obligations existed regardless of whether the federal government chose to outsource the work to a contractor and regardless of any contract terms that were inconsistent with the cleanup standards of SB 990.

Therefore, in *Boeing*, there was no question that the relevant state law directly regulated the federal government.  In contrast here, AB 32 does not directly regulate or obligate the United States in any way because it does not forbid it from operating detention facilities in the state.

---

[7] The Ninth Circuit recognized that rather than setting a neutral rule applicable throughout the State, the law mandated "more stringent cleanup procedures, not generally applicable within the state, to a particular site [Santa Susana]," and only to that site.  *Id.* at 836.  This illustrates how the issue of "discrimination" often features prominently in any governmental immunity analysis, even in the context of a "direct regulation" claim.  *See also id.* at 839.

9

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

Finally, to the extent Plaintiff suggests that AB 32 is a direct regulation of the federal government because of the number of private facilities that would allegedly be forced close that argument must be rejected.  *See* Pl. Mem. in Support of Mot. for Prelim. Inj. [ECF No. 15] (Pl. MPI Br.) at 25.  Again, under *North Dakota*, a burden on the federal government that arises from a state law of neutral application does not violate intergovernmental immunity.  *North Dakota*, 495 U.S. at 435. Rather, the issue of an alleged burden is properly analyzed within the framework of conflict or obstacle preemption.  Defendants therefore address that issue below. *See* Argument section II, *infra*.

**B.   AB 32 Does Not Discriminate Against the Federal Government**

**1.   AB 32 Does Not Treat Private Companies That Contract With the Federal Government Worse Than Private Companies That Contract With State or Local Governments**

AB 32 also does not discriminate against the "Federal Government or those with whom it deals."  *North Dakota*, 495 U.S. at 437 (plurality).

"[A] state does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *California*, 921 F.3d at 881 (internal citation omitted).  The Supreme Court "has required that the regulation be one that is imposed on some basis unrelated to the object's status as a Government contractor or supplier, that is, that it be imposed equally on other similarly situated constituents of the State."  *North Dakota*, 495 U.S. at 438; *see Boeing*, 768 F.3d at 843; *California*, 921 F.3d at 882.

For example, in *Boeing*, the court determined that SB 990 discriminated against the United States and its contractor because it "applie[d] more stringent cleanup standards [to the Santa Susana site] than generally applicable state environmental laws."  *Boeing*, 768 F.3d at 843.  And in *California*, the court recognized that a state law might be discriminatory if it applied more stringent inspection requirements to facilities housing immigration detainees than to similar facilities housing state criminal detainees.  *California*, 921 F.3d at 882.

10

AB 32 does not treat private companies that contract with the federal government worse than private companies that contract with state or local governments.  AB 32 prohibits *anyone* from operating a private detention facility in California.  Cal. Penal Code § 9501.  This even-handed prohibition is not discriminatory against either federal contractors or the federal government itself.  In fact, AB 32 imposes direct restrictions on CDCR that it does not impose on the federal or local governments.  Cal. Pen. Code § 5003.1.

Nor does AB 32 single out federal contractors based solely on their "status as a Government contractor or supplier."  *North Dakota*, 495 U.S. at 438.  Unlike in *Boeing*, where the State targeted the Department of Energy with uniquely burdensome regulation (thereby uniquely impacting Boeing as DOE's contractor for the cleanup), *see Boeing*, 768 F.3d at 837, AB 32 does not impose more stringent requirements on federal contractors than are imposed on similarly situated state contractors.  AB 32 prohibits anyone from operating a private detention center for any governmental entity.  Such private prison contractors are being regulated because of their status as operators of private prisons in general, not because of their status as private prison operators for the federal government in particular.

### 2.   AB 32's Exceptions are Not Discriminatory

Plaintiff contends that AB 32's statutory exceptions render it discriminatory.  *See* Compl. at 26.  This is incorrect.

Several of AB 32's exceptions, on their face, are equally available to federal, state, *and* local government contractors.  *See* Cal. Penal Code §§ 9502(c) ("educational, vocational, medical, or other ancillary services" to federal, state, or local inmates), 9503 (privately owned or leased facilities operated by a government agency), 9505(a) (existing contracts).

Plaintiff takes issue with certain exceptions in California Penal Code section 9502 to AB 32's general prohibition of private detention facilities, arguing that these exceptions describe only state detention activities.  Compl., ¶ 121.  Even

11

1    assuming that is true, however, such a situation does not amount to discrimination

2    resulting from AB 32.  It simply reflects the reality that "there are no federal

3    contractors analogous to the state contractors who benefit from" these exceptions.

4    *United States v. Nye Cnty.*, 178 F.3d 1080, 1088 (9th Cir. 1999) (tax exemption for

5    state universities held not discriminatory where no federally-run universities existed

6    in the state).  In other words, the state and federal governments themselves are *not*

7    "similarly situated" to the extent the State of California happens to provide

8    additional services that do not implicate the same health and safety concerns

9    addressed in AB 32.  *Dawson v. Steager*, 139 S. Ct. 698, 705 (2019).

10        AB 32 regulates private "detention facilit[ies]" "in which persons are

11   incarcerated or otherwise involuntarily confined for purposes of execution of a

12   punitive sentence imposed by a court or detention pending a trial, hearing, or other

13   judicial or administrative proceeding."  Cal. Penal Code § 9500(a).  Private prisons

14   and immigration detention facilities, "in which persons are incarcerated or

15   otherwise involuntarily confined" for criminal or administrative proceedings, are

16   quite different than the facilities covered by the exceptions about which Plaintiff

17   complains:  private children's schools (Cal. Penal Code § 9502(e)), other non-

18   punitive environments for children (Cal. Penal Code § 9502(a)), grocery stores

19   (Cal. Penal Code § 9502(g)), nursing homes (Cal. Penal Code § 9502(d)), places for

20   the mentally ill (Cal. Penal Code § 9502(b)), and medical quarantine facilities (Cal.

21   Penal Code § 9502(f)).  Any disparate treatment between contractors operating

22   these facilities and private prison and detention center operators is justified by the

23   significant differences between the types of private contractors and facilities.  *See*

24   *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 815-16 (1989) (describing how

25   disparate treatment between "those who deal with one sovereign" and "those who

26   deal with the other" may be justified if there are "significant differences between

27   the two classes") (alterations and internal quotation marks omitted).  AB 32 permits

28

12

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

private contractors to provide services to federal, state, or local governments on equal terms.

Finally, Plaintiff suggests that the exception in California Penal Code section 9505, subsection (b) (and reflected in section 5003.1), makes AB 32 discriminatory. Compl., ¶ 122.  This subsection permits the State of California to "renew[]" a contract with a private detention facility "pursuant to subdivision (e) of Section 5003.1," which in turn provides that CDCR "may renew or extend a contract with a private, for-profit prison facility to provide housing for state prison inmates in order to comply with the requirements of any court-ordered population cap," Cal. Penal Code § 5003.1(e).

Subsection (b) does not create an exception generally related to overcrowding in California's prisons; it accommodates compliance with a particular court order currently in place.  A federal three-judge court has been supervising California's prison system for years.  *See generally Brown v. Plata*, 563 U.S. 493 (2011).  One remedy ordered by the three-judge court was a population cap of 137.5% of design capacity.  *Id.* at 539.  Complying with the court order is an ongoing obligation of California's Department of Corrections and Rehabilitation.[8]

Neither the federal government nor local governments are subject to similar litigation.  Accordingly, the federal court's overcrowding order is a constraint that makes California differently situated to the federal government or local governments.  *See Davis*, (*supra.*) 489 U.S. at 815-16.  Rather than being discriminatory, this provision simply recognizes the reality that AB 32 must yield to the orders of a federal court that is actively overseeing the population size of California's prisons.

Moreover, this exception's scope is limited.  First, the exception applies only to contract "renew[als]," and is therefore limited in time.  Cal. Penal Code § 9505(b).  Second, the exception is available only to the extent necessary to meet

---

[8] *See generally* https://www.cdcr.ca.gov/research/population-reports-2/.

13

the court-ordered population cap, *id.* § 5003.1(e), and even then only until January 1, 2028, *id.* § 5003.1(c).  California is making all efforts to comply with the population order, and it must be presumed that California will continue to do so in good faith.  *See Red Top Mercury Mines, Inc. v. United States*, 887 F.2d 198, 202-03 (9th Cir. 1989) ("There is a presumption of regularity in the performance of their duties by government officials").  The provision in AB 32 is a temporary bridge that enables California to comply with an existing federal court order while it transitions its inmate population away from private operators, not a permanent, discriminatory loophole for California.

For all of these reasons, AB 32 does not violate intergovernmental immunity.

## II.   AB 32 IS NOT PREEMPTED BY FEDERAL LAW

"Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  *CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 849 (9th Cir. 2019).  The second category is often referred to as conflict (or obstacle) preemption.  Plaintiff alleges this form of preemption.  *See* Compl. at 26-28.

Any preemption inquiry is "guided by two cornerstones."  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  "First, the purpose of Congress is the ultimate touchstone in every pre-emption case."  *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  "Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it."  *Medtronic*, 518 U.S. at 486 (quoting *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 111, 112 (1992) (Kennedy, J., concurring in part and concurring in judgment)).

Second, there is an assumption that the historic police powers of the state have not been superseded unless that was the "clear and manifest purpose of Congress."

14

1  *Wyeth*, 555 U.S. at 565; *see also Knox v. Brnovich*, 907 F.3d 1167, 1173-74 (9th
2  Cir. 2018).  Thus, "[s]ilence, without more, does not preempt."  *Chinatown*
3  *Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1143 (9th Cir. 2015).

4      California possesses the historic police power "to ensure the health and
5  welfare of inmates and detainees in facilities within its borders."  *See California*,
6  921 F.3d at 885-86; *Medtronic*, 518 U.S. at 475 ("States traditionally have had
7  great latitude under their police powers to legislate as to the protection of the lives,
8  limbs, health, comfort, and quiet of all persons" (internal quotation marks
9  omitted)); *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 719
10  (1985) ("[T]he regulation of health and safety matters is primarily, and historically,
11  a matter of local concern"); *see also Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104
12  (9th Cir. 2016) ("[W]hile the identity theft laws certainly have effects in the area of
13  immigration, the text of the laws regulate for the health and safety of the people of
14  Arizona").

15      Through AB 32, the California Legislature exercised its historic police power
16  to protect the health and safety of detainees within the state.  Based on the evidence
17  before it, the Legislature determined that privately-operated detention facilities pose
18  an unacceptable danger to the detainees, and the Legislature therefore barred
19  anyone from operating such facilities.  Thus, Plaintiff would have to show that it
20  was Congress's "clear and manifest purpose" to preempt AB 32.  As explained
21  below, because Plaintiff cannot show this, conflict preemption does not apply to
22  AB 32.

23      **1.    Congress Did Not Clearly and Manifestly Intend to Preempt**
24            **AB 32 Through Federal Immigration Law**

25      "Conflict preemption arises either when compliance with both federal and
26  state regulations is a physical impossibility . . . or when state law stands as an
27  obstacle to the accomplishment and execution of the full purposes and objectives of
28  Congress."  *CTIA*, 928 F.3d at 849 (internal quotation omitted); *see also California*,

15

1    921 F.3d at 879 ("To determine whether obstacle preemption exists, the Supreme

2    Court has instructed that we employ our judgment, to be informed by examining the

3    federal statute as a whole and identifying its purpose and intended effects" (internal

4    quotation omitted)).

5         The conflict preemption analysis "does not justify a freewheeling judicial

6    inquiry into whether a state statute is in tension with federal objectives; such an

7    endeavor would undercut the principle that it is Congress rather than the courts that

8    preempts state law." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607

9    (2011) (plurality opinion) (internal quotation omitted); *accord United States v. Cal.*,

10   921 F.3d at 879.  "[E]vidence of pre-emptive purpose, whether express or implied,

11   must therefore be sought in the text and structure of the statute at issue." *Virginia*

12   *Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1907 (2019).

13        Federal immigration law does not conflict preempt AB 32, because there is no

14   "clear and manifest" intent to do so.  First, it is possible to comply with both federal

15   immigration law and AB 32; federal immigration law does not compel private

16   companies to operate immigration detention facilities.

17        Second, AB 32 poses no obstacle to federal immigration law because

18   Congress did not clearly and manifestly intend for immigration detention facilities

19   to be operated by private companies.

20        Plaintiff alleges that 8 U.S.C. section 1231(g)(1) purportedly conflict preempts

21   AB 32.  Compl. at 27.  That statute and the "statutory framework surrounding it,"

22   *Medtronic*, 518 U.S. at 486, evince no clear and manifest Congressional intent for

23   the federal government to utilize private immigration detention facilities.  Rather,

24   section 1231(g)(1), together with 8 U.S.C. section 1103(a)(11), sets forth a different

25   scheme to address the limited capacity of existing immigration detention centers.

26   The federal government must use available existing facilities,

27

28

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

8 U.S.C. § 1231(g)(1), rent out and operate other facilities,[9] *id.*, construct new facilities, *id.*, or enter into an agreement with *states* to operate facilities, *id.* § 1103(a)(11).  Congress therefore contemplated that only the federal government and *states* would operate these facilities.[10]  Plaintiff has not pointed to any other statutes or promulgated regulations that diverge from or supplement these instructions.  Thus, in section 1231(g)(1), Congress has expressed not only a general intent for the federal government to house immigration detainees, but a specific intent on how federal agencies should do so.  AB 32 poses no obstacle to that specific intent, which is the dispositive issue for purposes of conflict preemption.

The legal limitations on who may act as an immigration detention officer confirm the lack of clear and manifest Congressional intent to utilize private immigration detention facilities.  The functions of immigration detention officers may be performed only by federal and state employees who have received specialized training and are under the direction and supervision of the U.S. Attorney General.  8 C.F.R. § 287.5; 8 C.F.R. § 287.5(c)(6); *see also Arizona v. United States*, 567 U.S. 387, 408-09 (2012).  Even then, state officers may act as immigration detention officers only pursuant to a written agreement and "to the extent consistent with State and local law."  8 U.S.C. § 1357(g)(1).  There is no similar exception permitting private persons to act as immigration detention officials.

---

[9] Section 1231(g)'s provisions requiring the federal government to "rent[]" or "lease" a facility rather than construct one does not authorize the government to contract for a privately-operated detention facility.  Rather, section 1231(g) is concerned with inadequate bed space, and the references to "rent[]" and "lease" refer to the federal government leasing a facility *from* another entity and the federal government operating that facility itself.

[10] Congress's provision for the *states* to operate some immigration detention facilities (and omission of operational details) actually suggests that Congress expected state health and safety regulations to apply to those facilities.  This further undercuts the argument that a state's health and safety regulation of detention facilities clearly and manifestly *conflicts* with Congressional intent here.

In support of its pending motion for preliminary injunction, Plaintiff has cited a number of cases in an attempt to demonstrate Congressional intent for federal agencies to utilize private immigration detention facilities. *See* Pl. MPI Br. at 31-33. None of these cases support Plaintiff's preemption arguments.

In particular, *Committee of Central American Refugees* did not involve any claim or analysis of preemption. *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1435 (9th Cir. 1986). In that case, immigration detainees alleged that their transfer from one detention facility to another violated due process. *Id.* The Ninth Circuit merely ruled that the detainees had failed to show that their transfer violated due process. *Id.* at 1440-41.

Plaintiff also cites *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 368-70 (2000). *See* Pl. MPI Br. at 31. There, Congress had enacted detailed provisions giving the President authority to impose and remove economic sanctions against Burma.[11] The Court found that the federal law conflict preempted a separate trade ban related to Burma imposed by Massachusetts, reasoning that Congress had clearly intended for the President to have exclusive authority to impose a "calibrated" scheme of economic pressure on Burma. *Crosby*, 530 U.S. at 376-78. Here, in contrast to the situation in *Crosby*, section 1231 provides instructions on how the U.S. Attorney General is to "arrange" for immigration detention facilities. 8 U.S.C § 1231(g)(1). Those instructions simply do not contemplate immigration detention facilities operated by private companies. And nothing about those instructions reveal a clear and manifest Congressional intent for those immigration detention facilities to be exempt from state or local regulatory constraints. *Compare* 8 U.S.C § 1231(g)(1) (listing options for detention facilities that do not include privately-operated facilities) *with* 18 U.S.C. § 4013(c)(1) (expressly allowing certain USMS detention facilities to be operated by private

---

[11] This brief uses the name Burma rather than Myanmar, because that is the name used by the Supreme Court in its opinion. *See Crosby*, 530 U.S. at 366, n. 1.

18

contractors, subject to state regulation).  Unlike the circumstances in *Crosby*, AB 32 does *not* undermine any "plenitude of Executive authority."  *Crosby*, 530 U.S. at 376.

The Ninth Circuit's decision in *Pittsburg* is also inapplicable because that case involved a "clear" and direct conflict between federal and state laws.  *See United States v. City of Pittsburg, Cal.*, 661 F.2d 783, 785 (9th Cir. 1981); Pl. MPI Br. at. 32.  In *Pittsburg*, state law prohibited mail carriers from crossing lawns without the owner's express consent, whereas federal law "authorizes postal carriers to cross lawns unless the owner objects."  *Pittsburg*, 661 F.2d at 785.  Here, AB 32's prohibition on persons within California operating private immigration detention facilities poses no such direct conflict with the U.S. Attorney General's general responsibility to arrange for immigration detention in federally owned, rented, or newly constructed facilities.  8 U.S.C. § 1231(g)(1).

Plaintiff has also argued that AB 32 is conflict preempted because it impedes the government's ability to contract.  Pl. MPI Br. at 33.  This argument fails because Plaintiff has not identified any statute or regulation related to government contracting with which AB 32 purportedly conflicts.  *Id.*; *see also Kansas v. Garcia*, No. 17-834, slip op. at 9 (U.S. 2020) ("In all cases, the federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress").  "There is no federal preemption *in vacuo* without a constitutional text, federal statute, or treaty made under the authority of the United States."  *Id.*

In support of its contract-related preemption argument, Plaintiff has cited *Gartrell Construction Inc. v. Aubry*, 940 F.2d 437 (9th Cir. 1991).  *See* Pl. MPI Br. at 33.  There, the Ninth Circuit ruled that specific federal construction contracting regulations conflict preempted a state licensing law because the state requirements overlapped with the federal criteria for assessing contractors' experience and qualifications.  *Gartrell*, 940 F.2d at 439.  The states were therefore "effectively

19

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

attempting to review the federal government's responsibility determination." *Id.* at 439. The same reasoning applied in *Student Loan Serving Alliance*, which Plaintiff also cites, in which a state licensing law was preempted by federal regulations providing assessment criteria for loan servicer qualifications. *Student Loan Serving Alliance v. District of Columbia*, 351 F. Supp. 3d 26, 62-63 (D.D.C. 2016); Pl. MPI Br. at. 33. Here, there are no federal regulations related to contracting that overlap, much less conflict, with AB 32's regulation of detention facility contractors. Thus, there is no conflict with any federal contracting laws.

For all of these reasons, federal immigration law does not conflict preempt AB 32.

## 2. Congress Did Not Clearly and Manifestly Intend to Preempt AB 32 Through Federal Criminal Law

Federal criminal detention law also does not conflict preempt AB 32. Congress did not clearly and manifestly intend to outsource its USMS facility operations to private contractors who would not be subject to state regulation.

Congress has expressly permitted private contractors to operate criminal detention facilities housing USMS detainees in specially designated districts. *See* 18 U.S.C. § 4013(a), (c)(1); 28 U.S.C. § 530C. *However*, Congress has also expressly made those contractors are subject to state regulation. *Id.* § 4013(c)(2)(C). The purpose of this limitation is to require contractors to "meet strict standards designed to protect public safety." 136 Cong. Rec. S17595-01, S17596, 1990 WL 168469 (Oct. 27, 1990) (statement of Sen. Kohl). Congress' clear and manifest intent therefore was to permit states to enact health and safety regulations applicable to private USMS detention facilities. *See* 18 U.S.C. § 4013(c)(2)(C).

AB 32 is the kind of state regulation that section 4013(c)(2)(C) contemplates. The law embodies the California Legislature's determination that private detention facilities pose unacceptable safety risks to detainees. AB 32's application to private

20

1  operators of detention facilities is therefore consistent, and does not clearly and

2  manifestly conflict, with Congress' intent.

3       Importantly, AB 32 cannot be preempted as a policy matter.  "[T]he possibility

4  that federal enforcement priorities might be upset is not enough to provide a basis

5  for preemption."  *Garcia*, slip op. at 19.  "The Supremacy Clause gives priority to

6  'the Laws of the United States,' not the criminal law enforcement priorities or

7  preferences of federal officers."  *Id.* (quoting U.S. CONST. art. VI, cl. 2).  The

8  possible policy effects of AB 32 therefore cannot direct a finding of preemption.

9       Federal criminal detention law therefore also does not conflict preempt AB 32.

10                                   **CONCLUSION**

11       For the reasons above, Defendants request that the Court dismiss the

12  Complaint without leave to amend.

13

14  Dated:  March 5, 2020                     Respectfully Submitted,

15                                    XAVIER BECERRA

16                                    Attorney General of California
                                  ANTHONY R. HAKL

17                                    Supervising Deputy Attorney General
                                  JOHN W. KILLEEN

18                                    Deputy Attorney General

19

20                                    */s/ Gabrielle D. Boutin*

21                                    GABRIELLE D. BOUTIN
                                  Deputy Attorney General

22                                    *Attorneys for Governor Gavin*
                                  *Newsom and Attorney General Xavier*

23                                    *Becerra, in their official capacities*

24

25

26  SA2020100025
    14502056.docx

27

28

Mem. of Pts. And Auth. ISO Mtn. to Dismiss Complaint (19-cv-2491-JLS-WVG)

## CERTIFICATE OF SERVICE

Case Name:   **The GEO Group, Inc. v. Gavin Newsom, et al**        No.   **19CV2491 JLS WVG**

I hereby certify that on <u>March 5, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>March 5, 2020</u>, at Sacramento, California.

|  |  |
|---|---|
| Eileen A. Ennis | *Eileen A. Ennis* |
| Declarant | Signature |

SA2020100025
14498177.docx