Siobhan Waldron (SBN 286378)
siobhan@immigrantlegaldefense.org
Immigrant Legal Defense
1322 Webster St, Ste 300
Oakland, CA 94612

*Attorney for* Amici Curiae
*Immigrant Legal Defense*
*& Immigrant Defense Advocates*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE GEO GROUP, INC.,** | Case No. 3:19-cv-2491-JLS-WVG |
| Plaintiff, | **BRIEF OF *AMICI CURIAE* IMMIGRANT LEGAL DEFENSE AND IMMIGRANT DEFENSE ADVOCATES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| **GAVIN C. NEWSOM, in his official capacity as Governor of the State of California; XAVIER BECERRA, in his official capacity as Attorney General of the State of California,** | Date:         April 23, 2020<br>Time:         1:30 p.m.<br>Dept:         4D<br>Judge:       Hon. Janis L. Sammartino<br>Trial Date:   None set<br>Action Filed: 12/30/2019 |
| Defendants. | |

-1-

## TABLE OF CONTENTS

STATEMENT OF INTEREST OF AMICI CURIAE ............................................. 5

INTRODUCTION ...................................................................................... 5

ARGUMENT ........................................................................................... 6

    I.    DECLARATORY RELIEF IS NOT APPROPRIATE BECAUSE THE CONTRACTS ARE INVALID. ................... 7

        A.    The Contracts at Issue are Invalid Because they were Awarded in Violation of Federal Procurement Requirements. ................................................ 7

        B.    The Contracts are Invalid Because They Were Executed Under the Tenure of Unconstitutionally-Appointed Acting Secretary of Homeland Security Chad Wolf. ...... 10

    II.    PLAINTIFF COMES TO THIS SUIT WITH UNCLEAN HANDS. ........................................................................ 12

        A.    Plaintiff Engaged in Inequitable Conduct by Usurping Local Government Authority and Circumventing Open Competition Rules to Secure Prior Contracts with ICE. ................................................................ 133

        B.    Plaintiff Engaged in Inequitable Conduct by Exerting Undue Influence Over Local Governments to Terminate IGSAs. ............................................................... 155

        C.    Plaintiff Continues to Exercise Undue Influence Over Both the City of Adelanto and City of McFarland in Obtaining Permits related to the Contracts in dispute.. 199

    III.    THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF. ..... 22

CONCLUSION ..................................................................................... 222

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

## <u>Cases</u>

<u>Johnson v. Yellow Cab Transit Co.</u>, 321 U.S. 383, 387 (1944) ........................... 12

<u>Keystone Driller Co. v. General Excavator Co.</u>, 290 U.S. 240, 245 (1933)......... 12

Pl.'s Mem. of Law and Points of Auth. in Opp'n to GEO's Mot. for a Protective Order, <u>Novoa v. The GEO Group, Inc.</u> (C.D. Cal., Dec. 16, 2019) (No. 5:17-cv-02514-JGB-SHKx). ................................................................................ 18

<u>Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.</u>, 324 U.S. 806, 814 (1945)........................................................................................................... 12

<u>Republic Molding Corp. v. B.W. Photo Utilities</u>, 319 F.2d 347, 349 (9th Cir. 1963) ...................................................................................................................... 12

## <u>Statutes</u>

10 U.S.C. § 2304 (2018) ................................................................................... 7, 8

41 U.S.C. § 1708 (2011) ....................................................................................... 9

41 U.S.C. § 253 (1999) ......................................................................................... 8

41 U.S.C. §3301 (2011) .................................................................................... 7, 8

Cal. Civil Code § 1670.9(d) ............................................................................... 21

Cal. Gov. Code §§ 7310-11 (2017)..................................................................... 16

## <u>Other Authorities</u>

Andrea Castillo, <u>Adelanto cuts ties to troubled ICE detention center — and removes a layer of oversight</u>, Los Angeles Times, April 8th 2019, https://www.latimes.com/local/lanow/la-me-adelanto-immigrant-detention-20190408-story.html............................................................................... 16, 17

Cal. State Auditor, <u>City and County Contracts With U.S. Immigration and Customs Enforcement</u>,  Report 2018-117, 15 (Feb. 2019), https://www.auditor.ca.gov/pdfs/reports/2018-117.pdf.................. 13, 14, 15

Martin Estacio, <u>Adelanto planning commissioner removed a week after opposing GEO expansion</u>, The Daily Press, Feb. 27, 2020, https://www.vvdailypress.com/news/20200227/adelanto-planning-commissioner-removed-week-after-opposing-geo-expansion ................... 20

Office of Inspector General, Dept. of Homeland Security, IMMIGRATION AND CUSTOMS ENFORCEMENT DID NOT FOLLOW FEDERAL PROCUREMENT GUIDELINES WHEN CONTRACTING FOR DETENTION SERVICES, at 18-53 (Feb. 21, 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-02/OIG-18-53-Feb18.pdf ............................................................................................... 9

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Rebecaa Plevin, How a private prison giant has continued to thrive in a state that wants it out, Palm Springs Desert Sun, Jan. 25, 2020, https://www.desertsun.com/in-depth/news/2020/01/24/private-prison-giant-geo-thrives-california-state-wants-out/2589589001/ ...................... 16, 17, 18

Rebecca Plevin, Homeland Security's solicitation for detention facilities could violate law, experts say, Palm Springs Desert Sun, Dec. 20, 2019, https://www.desertsun.com/story/news/2019/12/20/ice-signs-long-term-contracts-private-detention-centers-two-weeks-ahead-state-law/2713910001/ ................................................................................................................. 10

Sam Morgen, McFarland Mayor Manuel Cantu resigns following Planning Commission vote, The Bakersfield Californian, Feb. 20, 2020, https://www.bakersfield.com/news/mcfarland-mayor-manuel-cantu-resigns-following-planning-commission-vote/article_cab0fbd2-5349-11ea-bbbc-a3769069039d.html ................................................................................ 21

**Regulations**

FAR 12.603 (2017) ............................................................................................ 9

**Court Documents**

Plaintiffs' Memorandum of Law and Points of Authorities in Opposition to GEO's Motion for a Protective Order, Novoa v. The GEO Group, Inc. (C.D. Cal., Dec. 16, 2019) (No. 5:17-cv-02514-JGB-SHKx)...................................... 18

**Letters**

Letter from Congresswoman Zoe Lofgren et al. to Chad F. Wolf, Acting Secretary U.S. Department of Homeland Security (Nov. 14, 2019), https://www.harris.senate.gov/news/press-releases/harris-lofgren-nadler-lead-letter-questioning-ices-move-to-circumvent-ca-law-banning-private-detention-facilities ............................................................................ 8, 9

Letter from Jordan Wells, Attorney at the ACLU-SC], to Dave Borcky, Jr., Chairperson of the McFarland Planning Commission (Jan. 28, 2020) (on file with the ACLU-SC).............................................................................. 21, 22

## STATEMENT OF INTEREST OF AMICI CURIAE

Immigrant Legal Defense and Immigrant Defense Advocates (collectively hereinafter referred to as "*Amici*") respectfully submit this brief in support of Defendants. [1]

Immigrant Legal Defense is a nonprofit agency based in Oakland, California, dedicated to providing immigration legal services. Immigrant Defense Advocates is a project of the nonprofit Social Good Fund, with a focus on immigrants' rights policy and advocacy in the state of California. *Amici* are part of a broader coalition of immigrants' rights organizations involved in providing services to detained immigrants. *Amici* advocate for the interests of non-profit and pro bono attorneys providing legal services in detention facilities in California, as well as those presently detained in federal institutions while awaiting deportation decisions.

*Amici* are familiar with the issues presented in this case and have interest in the matter on behalf of the group of immigrants whom they serve in the state of California. *Amici* respectfully submit the proposed amicus curiae brief in order to provide the court with information and analysis with respect to issues presented.

## INTRODUCTION

The Plaintiff in this case, The GEO Group, Inc. (hereinafter, "GEO") appears before this Court seeking equitable and declaratory relief with respect to contracts it signed with the United States Federal Government (hereinafter, "federal government") for the operation of detention facilities in California. This

---

[1] Counsel for all parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No persons other than the amici or their counsel made a monetary contribution to this brief's preparation or submission.

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

includes preliminary and permanent injunctions against Defendant the State of California (hereinafter, "California"), as well as their successors, agents, employees, and all those under their supervision, from enforcing California Assembly Bill 32 (hereinafter, "AB 32") against GEO to cease its operation of immigration detention facilities for United States Marshals Service (USMS) and Immigration and Customs Enforcement (hereinafter, "ICE").

*Amici* write to urge the Court to find that Plaintiff is not entitled to declaratory relief with respect to the contracts it seeks to validate with this suit for two primary reasons. First, the government contracting process was flawed and executed in violation of longstanding federal procurement regulations requiring full and open competition with contracts. Second, Plaintiff's bad faith conduct in the state of California in relation to the contracts it seeks to validate should preclude it from stating a claim for relief.  Plaintiff's actions are part of a pattern of bad faith conduct on the part of Plaintiff, including unduly influencing financially struggling city governments to become its agent for purposes of federal contacts, all in pursuant of its financial interests.

## ARGUMENT

*Amici* write to address concerns regarding the contracts Plaintiff seeks to validate through this suit, including a) the contracts for operation of the Mesa Verde ICE Processing Facility, Central Valley Modified Community Correctional facility, and Golden State Modified Community Correctional Facility, all in the City of McFarland and b) the contracts for operation of the Adelanto ICE Processing Center and the Desert View Modified Community Correctional Facility, both in the City of Adelanto, California.  *Amici* urge the Court to consider the following regarding the validity of the contracts under federal regulations governing such contracts as well as Plaintiff's inequitable conduct in securing these contracts.  *Amici* offer arguments that the contracts are invalid due to faulty

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

solicitation process on behalf of the federal government, and that Plaintiff should be barred from declaratory relief in this suit under the doctrine of unclean hands.

## I.    DECLARATORY RELIEF IS NOT APPROPRIATE BECAUSE THE CONTRACTS ARE INVALID.

### A.    The Contracts at Issue are Invalid because they were Awarded in Violation of Federal Procurement Requirements.

Declaratory relief with respect to the contracts at issue is improper because they were awarded pursuant to an invalid process which violated federal procurement requirements.  The Federal Acquisition Regulation ("FAR"), incorporated at 10 U.S.C. § 2304 (2018) and 41 U.S.C. §3301 (2011), requires, with certain limited exceptions, that contracting officers shall promote and provide for full and open competition in soliciting offers and awarding Government contracts.  In this case, the solicitation which resulted in the contracts secured by Plaintiff do not meet the standards for full and open competition.

The solicitation from ICE which resulted in the contract awards at issue was Solicitation No. 70CDCR20R00000002, issued on October 16, 2019.  Although the Solicitation indicates that the procurement process would be conducted in a manner consistent with "full and open competition," its terms appeared to have been designed in a manner to eliminate meaningful competition in favor of three private corporations which were already operating four existing immigration detention facilities within California, including Plaintiff.

The solicitation was simply a formality that ICE was obliged to comply with in order to renew contracts for all facilities and operators that were already in operation in the state of California in a coordinated attempt to circumvent AB 32, which was set to go into effect on January 1, 2020.

The solicitation sought four contractor-owned-and-operated facilities, with the requirement that each be "turnkey ready," and that contractors be prepared to

enter into fifteen-year contracts with the agency. These requirements were posted with a 15-day response time for bids. The initial bid posted by ICE was revised on October 23rd. Far from creating a competitive process in the interest of public savings and economic efficiency, the solicitation also included a term of 5 years, with additional options that could ultimately result in a 15-year contract. Such a lengthy contract term is in contravention of full and open competition in the marketplace. Laws enumerated at 10 U.S.C. § 2304 and 41 U.S.C. § 3301 require, with certain limited exceptions that contracting officers shall promote and provide for full and open competition in soliciting offers and awarding Government contracts. See 10 U.S.C. § 2304; 41 U.S.C. § 3301. Federal procurement law includes requirements for solicitations to provide lengthy bidding windows in order to attract competitive offers and open competition. The Competition in Contracting Act ("CICA") of 1984, 41 U.S.C. § 253, specifies that agencies may not issue solicitations earlier than 15 days after the notice is published, or establish a deadline for submission of bids or offers earlier than 30 days after the solicitation is issued. See 41 U.S.C. § 253 (1999). Federal contracts are typically set for a period of one year, in order to ensure flexibility and financial prudence by the government. See Id.

The fact that the solicitation in question was publicized for only fifteen days, in pursuit of fifteen-year contracts in excess of five billion dollars provides a *prima facie* case that the solicitation process was neither competitive nor open, but instead designed to expedite contract awards to facilities that were already in operation.

A Congressional delegation expressed their concern that the solicitation was designed to prioritize the existing contractors over a truly open competitive environment. Letter from Congresswoman Zoe Lofgren *et al*. to Chad F. Wolf, Acting Secretary U.S. Department of Homeland Security (November 14, 2019), https://www.harris.senate.gov/news/press-releases/harris-lofgren-nadler-lead-

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

letter-questioning-ices-move-to-circumvent-ca-law-banning-private-detention-facilities.   Lofgren *et al.* stated, "We write to express our serious concern with the process by which Immigration and Customs Enforcement (ICE) has solicited contracts for federal detention facilities." Id.  They continued, "Given the timing and terms of this Solicitation—particularly in light of ICE's history of suspect contract activities and insufficient oversight—we are understandably concerned that the Solicitation is intended to favor incumbent contractors. If so, these efforts would be in direct contradiction with the spirit of full and open competition required by federal procurement law." Id.

To date ICE has not responded to inquiries from the Congressional delegation with respect to the procurement process.

The FAR generally requires that contracts with an estimated value exceeding $25,000 be advertised for at least fifteen days before issuance of a solicitation. 41 U.S.C. § 1708 (2011).  For the Solicitation in this case, ICE utilized the combined synopsis and solicitation procedure set forth in FAR § 12.603, which is designed "to reduce the time required to solicit and award contracts for the acquisition of commercial items." FAR 12.603 (2017).  As a result, bidders were required to propose turnkey ready facilities within an extremely short period of time, underscoring the advantage that existing contractors had in securing these contracts, and directly contradicting the spirit of "full and open competition" required by law.

The Department of Homeland Security (hereinafter, "DHS") Office of Inspector General (hereinafter, "OIG") has previously identified highly circumspect behavior by ICE's procurement practices.  The OIG concluded that "ICE has no assurance that it executed detention center contracts in the best interest of the Federal Government, taxpayers, or detainees" and further noted that "[i]t appears that ICE deliberately circumvented [Federal Acquisition Regulation (FAR)] provisions[.]"  See Office of Inspector General, Dept. of Homeland

-9-

Security, IMMIGRATION AND CUSTOMS ENFORCEMENT DID NOT FOLLOW FEDERAL PROCUREMENT GUIDELINES WHEN CONTRACTING FOR DETENTION SERVICES, at 18-53 (Feb. 21, 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-02/OIG-18-53-Feb18.pdf.

Legal experts have joined the Congressional delegation in expressing concern regarding this solicitation. See Rebecca Plevin, Homeland Security's solicitation for detention facilities could violate law, experts say, Palm Springs Desert Sun, Dec. 20, 2019, https://www.desertsun.com/story/news/2019/12/20/ice-signs-long-term-contracts-private-detention-centers-two-weeks-ahead-state-law/2713910001/.

Plevin's article quoted Michael Greenberger, a professor at the University of Maryland Francis King Carey School of Law and founder and director of the University of Maryland Center for Health and Homeland Security.  "It's improper to write the solicitation in such a way that is so specific that it would only attract certain favored bidders….  [The solicitation is] unnecessarily limited in that regard."  Id.  He went on to explain, "[ICE is] in effect trying to grease the skids to get the contracts to the prison industry officials who they want to run the prisons."  Id.

### B. The Contracts are Invalid Because They Were Executed Under the Tenure of Unconstitutionally-Appointed Acting Secretary of Homeland Security Chad Wolf.

There is a question as to the validity of the contracts for which Plaintiffs now seek declaratory relief due to the fact that they were entered into during the tenure of acting Secretary of Homeland Security, Chad Wolf.  The validity of these contracts has come into question based on issues related to succession and appointments at the highest levels of the Department of Homeland Security.  Congressional representatives have noted that the procedure which resulted in the appointment of Wolf may have been fatally flawed such that decisions or actions

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

executed under his tenure are in legal jeopardy.  As the letter by the Congressional delegation noted:

> On April 10th, 2019 prior to her departure, then Secretary Kirstjen M. Nielsen updated the internal policy for "DHS orders of Succession and Delegations of Authorities for Named Positions." In that update, Secretary Nielsen changed the order of delegation of authority for the position of Secretary "in the event that I am unable to act during a disaster or catastrophic emergency." However, Secretary Nielsen did not change the order of succession "[i]n case of the Secretary's death, resignation, or inability to perform." Instead, she left in place the line of succession under that Executive Order. (Cite) In fact, the Department appears to have skipped over two Senate-confirmed officials, the Under Secretary for National protection and Programs (since renamed by law as the Director of Cybersecurity and Infrastructure Agency) and the Under Secretary for Intelligence and Analysis.

> This act may have rendered Mr. McAleenan's appointment unlawful from the start. That would place many of Mr. McAleenan's decisions in legal jeopardy, including the November 8, 2019 Amendment that was the basis for Mr. Wolf's appointment.

Letter from Congresswoman Zoe Lofgren *et al*. (Nov. 14, 2019).  The Homeland Security Act is the controlling statutory authority for appointing an Acting Secretary of Homeland Security, and it was not properly followed in the appointment of Mr. McAleenan, and as a result, that of Mr. Wolf.  The Amendment issued by Mr. McAleenan to appoint Mr. Wolf was also issued after the 210-day statutory limit by Acting officials established by the Federal Vacancies Reform Act (FVRA).  Meaning that his own appointment, had it been valid, had likely already expired before he appointed Mr. Wolf.

The questions presented with respect to the appointment of Mr. McAleenan and Mr. Wolf may be outside of the jurisdiction of this Court to consider but are such that they place Plaintiff's contracts in legal jeopardy rendering declaratory relief for them inappropriate at this time.

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## II.   PLAINTIFF COMES TO THIS SUIT WITH UNCLEAN HANDS.

The unclean hands doctrine derives from the equitable maxim that *he who comes into equity must come with clean hands.*  This maxim "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814 (1945).

In the matter before the Court, the Plaintiffs' pattern of conduct with respect to the contracts at issue include documented instances of inequitable conduct and bad faith.  This includes exercising undue influence over local cities in California with respect to Federal contracts, in the pursuit of Plaintiff's financial benefit. Plaintiff has made promises to make extracontractual payments to local cities in order to secure the benefit of intergovernmental agreements and other outcomes. Plaintiff has sought to hide this influence from the public record, cloaking their intentions and goals under the guise of independent decisions made by local cities. Plaintiffs' CEO has failed to truthfully testify about these activities while under oath.  At present, Plaintiff remains engaged in a sophisticated effort to influence the cities of Adelanto and McFarland with respect to local permits and the contracts at hand. Equity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue.  Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 387 (1944); Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245 (1933).

Plaintiff's inequitable and deceptive conduct directly relates to its pursuit of the detention contracts at issue.  In applying the unclean hands doctrine, "[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants." Republic Molding Corp. v. B.W. Photo Utilities, 319 F.2d 347, 349 (9th Cir. 1963).  Plaintiff's

conduct as it relates to obtaining contracts with ICE for civil detention in the state of California was rife with bad faith and deception from the outset, and culminated in the contracts for which it now seeks relief.

**A.     Plaintiff Engaged in Inequitable Conduct by Usurping Local Government Authority and Circumventing Open Competition Rules to Secure Prior Contracts with ICE.**

Plaintiff has acted outside its normal function as a private actor, and has instead sought to control, manipulate or interfere with governmental functions in order to pursue its financial interests.  This pattern of behavior included Plaintiff approaching local cities in California as partners for intergovernmental services agreements ("IGSA") with the federal government, including the City of McFarland and the City of Adelanto.  Typically, a local government actor would contract directly with the federal government for or to provide services, and then seek out a private operator in order to execute the contract.  With respect to the city of Adelanto and McFarland it appears that Plaintiff was the initiator of these agreements.  In doing so it appears Plaintiff avoided the requirements to compete in a fair and open competition process against other contractors.  A report by the State Auditor of California confirmed that Plaintiff has used IGSAs as a means to circumvent federal procurement rules.

> Federal law allows ICE to enter into these types of agreements with states, counties, or cities for the provision of detention services without competitive bidding. However, if ICE contracted directly with the private operators, ICE would have to comply with federal procurement rules that generally require full and open competition unless a statutory exception to the competitive process applies. ICE has asserted that federal law does not require it or the government entity that has entered into an intergovernmental service agreement with ICE to competitively award any related subcontracts. This would include the cities' detention subcontracts with private operators. City council documents show how the private operators worked with two of the cities to secure or amend the intergovernmental service agreements with ICE.

Cal. State Auditor, City and County Contracts With U.S. Immigration and Customs Enforcement, Report 2018-117, 15 (Feb. 2019), https://www.auditor.ca.gov/pdfs/reports/2018-117.pdf.

The ability to circumvent competitive bidding law requires the cooperation of a local city, a process typically initiated by a federal entity looking to contract with a local city. With the City of McFarland, Plaintiff took on the role of initiating an IGSA in order to benefit from a contract awarded without competition. The California audit described a January 2015 memo to the city council in which McFarland's city manager explained how Plaintiff sought to enter into the contract with ICE by approaching city after city to "partner" with them. As quoted by the state auditor, the memo stated:

> GEO would like to enter into an Intergovernmental Service Agreement contract with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE) for the detention and care of aliens at its Mesa Verde facility in Bakersfield. GEO cannot enter into an [intergovernmental service agreement] with a federal government on its own. An [intergovernmental service agreement] can only be entered into with another government authority. Mesa Verde is located on South Union, in the City of Bakersfield. Since the prison is in the City of Bakersfield, GEO first approached the City of Bakersfield to partner with them on [the intergovernmental service agreement]. The City of Bakersfield declined to be a partner. GEO then asked the City of McFarland to partner with them.

Id. at p.15.

Plaintiff also flouted open competition requirements within the procurement process when it initiated an IGSA with the city of Adelanto. In the case of Adelanto, Plaintiff inappropriately negotiated on behalf of the city directly with ICE regarding an IGSA that related to its facilities. As noted by the State Auditor, "A similar situation occurred in Adelanto. In a May 2014 memo to the city council, the Adelanto city manager at the time explained that Plaintiff negotiated with ICE

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

to amend Adelanto's ICE contract to house additional detainees at the Adelanto Detention Facility." Id. at p.15.

Plaintiff's conduct is inequitable because it usurped legitimate governmental authority for its own benefit, and also with respect to other private contractors who may have competed against it for these services.

Plaintiff seemingly sought out cities that would provide minimal interference or oversight with respect to their administration of these facilities. As noted by the State audit, "The cities have only been minimally involved in the ICE contracts. For example, the Adelanto city manager stated that the only involvement the city has with ICE or GEO is to sign monthly invoices from GEO and then to transfer to GEO the federal funds the city receives when ICE pays the invoices." Id. at p. 17.

### B.    Plaintiff Engaged in Inequitable Conduct by Exerting Undue Influence Over Local Governments to Terminate IGSAs.

Plaintiff has exercised, and seemingly continues to exercise, undue influence over the city governments of Adelanto and McFarland, in order to obtain outcomes that serve its financial interests.

Plaintiff convinced the city governments in both Adelanto and McFarland to terminate the existing IGSA agreements by promising to make extra-contractual payments to each city if they terminated IGSAs with ICE; used the termination of the IGSAs to secure one-year bridge contracts with ICE outside of the normal procurement process; all of which created the circumstances for Plaintiff to secure the long-term contracts that are at issue in this case.

Plaintiff's goal in terminating the IGSAs with the City of Adelanto and McFarland appears to have been to facilitate the expansion of its facilities and increase its profits, while circumventing California law.

With the City of Adelanto, Plaintiff wielded undue influence by offering inappropriate financial payments outside of direct contracts in order to exert its

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

influence. As reported by the Palm Springs Desert Sun newspaper, "City Manager Jessie Flores asked GEO for donations to local causes, including $7,500 for the city's annual Christmas parade.  In one email, Flores called a Jan. 16, 2019, meeting with Zoley and his executive team "very productive and informative" and asked for a $3,500 contribution to the baseball league." Rebecaa Plevin, How a private prison giant has continued to thrive in a state that wants it out, Palm Springs Desert Sun, Jan. 25, 2020, https://www.desertsun.com/in-depth/news/2020/01/24/private-prison-giant-geo-thrives-california-state-wants-out/2589589001/. Plaintiff also exerted undue influence over the City of Adelanto to protect its financial interests and to expand its facilities in 2019 in response to the passage of AB 103. See Cal. Gov. Code §§ 7310-11 (2017).  This California law regulated IGSA agreements by limiting the expansion of any facility that operated pursuant to a contract with a local city or county in California.  Plaintiff pursued a plan to convince the Adelanto city government to terminate its IGSA in order for Plaintiff to expand its facilities, seemingly using off the books financial promises outside of any contractual arrangement to do so.  On April 8th, 2019, the Los Angeles Times ran a story which uncovered the role which Plaintiff played in the sudden termination of the IGSA between ICE and Adelanto. Andrea Castillo, Adelanto cuts ties to troubled ICE detention center — and removes a layer of oversight, Los Angeles Times, April 8th 2019, https://www.latimes.com/local/lanow/la-me-adelanto-immigrant-detention-20190408-story.html.  The article included an interview with then Mayor Pro Tem Stevevonna Evans, in which she recounted her own first-hand knowledge of Plaintiff's attempts to lobby the Adelanto City Manager Jesse Flores to end the IGSA in order to expand the facility:

> "Evans said Flores' idea to cancel the contract goes back to late February, when she walked in on a meeting between him and GEO Group Chief Executive George Zoley over the possibility of ending the

contract. She said they explained that ending the contract would alleviate the city of potential future litigation.

At that February meeting, Evans said, Zoley also explained that state law prohibited the company from expanding operations — unless the city backed out of the contract.

In fiscal year 2017, Adelanto transferred more than $71 million in payments from ICE to GEO Group. In return, GEO has paid the city a yearly fee of about $1 million to oversee the distributions. Evans said that Zoley assured city leaders that they would continue receiving payment even after they ended the contract."

Id.

Plaintiff promised the continuation of monetary payments *only if* city officials agreed to terminate the existing IGSA. A collection of emails obtained by the Desert Sun through the California Public Records Act (hereinafter, "CPRA") document how Plaintiff systematically lobbied the city of Adelanto to terminate the IGSA agreement and set the stage for the Adelanto facility to expand.

According to the Desert Sun, later emails confirm the offer for extra-contractual payments from Plaintiff to the City of Adelanto:

On March 13, a GEO employee sent Flores a memo from Zoley. "We are respectfully requesting that the City of Adelanto give its notice of discontinuation to ICE," Zoley said in the memo. In addition to the bed taxes, GEO would continue paying the city $50,000 a year, even though Adelanto would no longer be contractually involved in the detention center and the city would have no oversight role of the facility, he said. Terminating the contract, he said, would "reduce the city's legal and financial exposure to ICE critics advancing claims for detainee records, or other facility documents."

"The annual financial compensation to the City of $50,000 for facilitating the IGSA will be continued by GEO," he wrote. GEO would also keep paying the bed tax — nearly $1 million — outlined in the 2016 development agreement between the company and the city, he said. Critics see GEO's pledge to continue paying Adelanto $50,000, with no strings attached, as an incentive to get the struggling city to comply with its request. "

-17-

Plevin, Prison Giant, supra.

The City ultimately copied the letters Zoley provided Flores onto its letterhead, changed the date, and sent notices of termination as requested to ICE and Plaintiff on March 27, 2019.

These emails show indisputable evidence of Plaintiff's undue influence on the City of Adelanto.  Despite these facts, Plaintiff's CEO George Zoley stated under oath that other than one single meeting with officials from the City of Adelanto to discuss the possible termination of the IGSA for the Adelanto Facility, he was aware of no other communications between himself and officials from the City of Adelanto related to the termination of the IGSA.  See Pl.'s Mem. of Law and Points of Auth. in Opp'n to GEO's Mot. for a Protective Order, Novoa v. The GEO Group, Inc. at *5 (C.D. Cal., Dec. 16, 2019) (No. 5:17-cv-02514-JGB-SHKx).

Plaintiff undertook a similar effort to exercise undue influence over the City of McFarland.  As reported by the Desert Sun, "On Nov. 30, 2018, John Wooner, the McFarland City Manager at the time, notified GEO that the city would be ending its agreements with the company and ICE.  In a letter, he said the city's agreements with the company and ICE had been a "satisfactory arrangement for the City" until the state started adopting laws focused on detention facilities.  When he sent two more letters to GEO and ICE on Dec. 19, 2018, informing them that the city would be ending its agreements in three months, he used nearly identical language as that provided by GEO to Adelanto." Plevin, Prison Giant, supra.

Plaintiff's conduct with local government authorities underscores a pattern of bad faith and impropriety.  The terminations of IGSAs with the cities of Adelanto and McFarland appear to not only have been part of a scheme by Plaintiff to circumvent California state law, but provide circumstantial evidence that Plaintiff's actions were coordinated with ICE.  Plaintiff's actions strongly indicate

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

that they had some level of assurance that if IGSAs terminated, they would receive a direct contract with ICE. Taken into the broader context of the procurement process for the contracts in dispute, serious questions arise of collusion to circumvent state and federal law.

In fact, following the termination of the IGSA for the Mesa Verde Detention Facility by the City of McFarland, Plaintiff received a one-year, nineteen-million-dollar contract from ICE to continue operating the detention facility. The contract was awarded outside of the "full and open competition" requirements of federal law, with ICE citing FAR § 6.302-2, Unusual and Compelling Urgency. This exception is normally invoked in urgent situations in which the procurement of specific services is needed to avert serious circumstances or injury. However, in this case the specific circumstance and sudden termination of the IGSA was the direct result of Plaintiff's conduct.

Plaintiff also received a direct one-year contract from ICE for the Adelanto detention facility, for sixty-three million dollars. The legal rationale cited by ICE to secure those one-year bridge contracts – that is the "unusual and compelling urgency" clause – failed to acknowledge the role that Plaintiff played in the termination of prior IGSAs and seemingly points to collusion and coordination from the outset.

### C. Plaintiff Continues to Exercise Undue Influence Over Both the City of Adelanto and City of McFarland in Obtaining Permits related to the Contracts in dispute.

Plaintiff has sought to exercise undue influence with respect to the Cities of Adelanto and McFarland in obtaining permits for the use of three facilities which had previously been operated by the California Department of Corrections and Rehabilitation. The facilities include the Central Valley Modified Community Correctional Facility in the City of McFarland; the Golden State Modified Community Correctional Facility, also in McFarland; and the Desert View

Modified Community Correctional Facility in Adelanto.  Each of these facilities requires a local permit to operate.  Despite not having these permits secured, Plaintiff included these facilities in the December 2019 contracts it signed with ICE.  Plaintiff offered these facilities as "turnkey-ready" when it bid to secure the contracts at issue when in fact it did not have permits from local authorities.  Such behavior  suggests that Plaintiff was not concerned about its ability to secure these permits from the respective cities, or perhaps that doing so would be a mere formality given its previous ability to exact certain results.

Plaintiff's deep influence and intent was specifically raised during a February 19, 2020 public hearing held by the Adelanto City Planning Commission to discuss, among other things, Plaintiff's request for a permit to convert its property (Desert View) into an annex for the Adelanto detention facility pursuant to the December 2019 contracts with ICE.  During the hearing, Commission Vice Chairman Jay Shawn Johnson, who opposed the proposal, went on record stating his concerns that Plaintiff had exercised undue influence on the commission and city officials at large. "How do you enter into a contract for beds that, at that point, you technically didn't have?" he said before the expansion's approval.  Martin Estacio, Adelanto planning commissioner removed a week after opposing GEO expansion, The Daily Press, Feb. 27, 2020, https://www.vvdailypress.com/news/20200227/adelanto-planning-commissioner-removed-week-after-opposing-geo-expansion.  "What made the GEO Group so sure that this modification would be approved?" Id.  He underscored that the city was the target of a plot by Plaintiff, detailing Plaintiff's lobbying of city officials to terminate the prior IGSA contract in order that it may expand its facilities, and allegations of Plaintiff receiving preferential treatment in submitting a proposal for the annexation of the Desert View facility.  Id.  Significantly, Vice Chairman Johnson noted that Plaintiff had already issued a press release which announced the expansion of the Adelanto detention facility, even though the city had yet to

vote on the proposal.  Id.  Based on his allegations of Plaintiff's misconduct, Johnson voted against the proposal - and was subsequently removed from the planning commission by the Adelanto city council.  Id.

On January 28th, 2020 the ACLU Of Southern California (hereinafter, "ACLU-SC") sent a letter to Chairperson of the McFarland Planning Commission raising concerns about the committee hearings' compliance with state laws in its approval of the permits to Plaintiff. Letter from Jordan Wells, Attorney at the ACLU-SC], to Dave Borcky, Jr., Chairperson of the McFarland Planning Commission (Jan. 28, 2020) (on file with the ACLU-SC). Wells stated:

> The Commission plainly has not yet met the notice requirement of the Dignity Not Detention Act, SB 29, codified at Cal. Civil Code § 1670.9. The law promises transparency by prohibiting a city from issuing a permit for a corporation to detain immigrants unless the city has met both of two requirements: *"[p]rovided notice to the public of the proposed . . . permitting action* at least 180 days before [issuing the permit] and "[s]olicited and heard public comments on the proposed . . . permit action in at least two separate meetings." Cal. Civil Code § 1670.9(d) (2019).

Id.  (emphasis added).

The letter alleged that the McFarland Planning Commission did not adequately provide notice to the public with regard to Plaintiff's permit application. "GEO representatives appear to have been the lone members of the public with access to the applications before last week's hearing and thus were the only attendees in a position to offer fully informed input." Id.

Despite Plaintiff's attempts to influence the process, the planning commission failed to pass the resolution approving the expansion, ending in a 2-2 vote on Feb. 19, 2020.  Following the vote, the Mayor of McFarland, Manuel Cantu Jr. resigned the next day. Sam Morgen, McFarland Mayor Manuel Cantu resigns following Planning Commission vote, The Bakersfield Californian, Feb. 20, 2020, https://www.bakersfield.com/news/mcfarland-mayor-manuel-cantu-

resigns-following-planning-commission-vote/article_cab0fbd2-5349-11ea-bbbc-a3769069039d.html.

### III.   THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF.

Plaintiff in this case seeks declaratory relief for Federal contracts signed in December of 2019. The validity of the contracts in dispute is subject to the Contract Disputes Act of 1978, and thus any relief with respect to these contracts must be obtained through that statute, or alternatively through the United States Court of Federal Claims. See 41 U.S.C. §§ 7101-09. The intention of the act includes "To provide for the resolution of claims and disputes relating to the Government contracts awarded by executive agencies. See Id.  As such, this court should decline to exercise jurisdiction over the issue of declaratory relief.

### CONCLUSION

Plaintiff's record of bad faith conduct in the State of California with respect to contract procurement presents compelling evidence that this court must consider in granting relief. This conduct includes exercising undue influence in order to obtain financial gain, while skirting laws designed to ensure fairness, accountability and transparency in government contracts. The federal contracts at issue in this case violate the spirit and letter of federal procurement law, and thus Plaintiff should not be granted declaratory relief.  *Amici* respectfully urge the court to weigh Plaintiff's conduct and the circumstances alleged as it considers the parties' motions.

Respectfully submitted,

DATED: March 24, 2020                __/s/ Siobhan Waldron_____

BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Siobhan  Waldron (SBN 286378)
siobhan@immigrantlegaldefense.org
Immigrant Legal Defense
1322 Webster St, Ste 300 Oakland, CA 94612

*Attorney for Amici*
*Immigrant Legal Defense*
*Immigrant Defense Advocates*