XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
GABRIELLE D. BOUTIN
Deputy Attorney General
State Bar No. 267308
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-6053
  Fax:  (916) 324-8835
  E-mail:  Gabrielle.Boutin@doj.ca.gov
*Attorneys for Defendants Governor Gavin
Newsom and Attorney General Xavier
Becerra, in their official capacities, and the
State of California*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE GEO GROUP, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**GAVIN C. NEWSOM, in his official capacity as Governor of the State of California; XAVIER BECERRA, in his official capacity as Attorney General of the State of California,**<br><br>Defendants. | 3:19-cv-02491 JLS-WVG<br><br>3:20-cv-00154-JLS-WVG<br><br>**DEFENDANTS' ADDITIONAL BRIEF IN RESPONSE TO COURT'S JULY 21, 2020 ORDER, ECF NO. 45, RE: JULY 16, 2020 HEARING**<br><br>Date:          July 16, 2020<br>Time:          1:30 p.m.<br>Courtroom:   6D<br>Judge:         Hon. Janis L. Sammartino<br>Action Filed:    12/30/2019 |
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**GAVIN NEWSOM, in his Official Capacity as Governor of California; XAVIER BECERRA, in his Official Capacity as Attorney General of California; THE STATE OF CALIFORNIA,**<br><br>Defendants. | |

# TABLE OF CONTENTS

**Page**

Introduction ..............................................................................................................1

Argument ...............................................................................................................2

I.    AB 32 Does Not Directly Regulate the Federal Government .............2

    A.    The "Legal Incidence" of AB 32 Falls on Private Contractors Only ................................................................. 2

    B.    The GEO Group and Other Private Detention Contractors Are Not Federal Government Instrumentalities ........................7

    C.    Privately-Owned Detention Facilities Are Not Federal Installations................................................................ 11

II.    The GEO Group's Fourth Cause of Action is Not Subject to the Contract Disputes Act or The Tucker Act .......................... 13

Conclusion ............................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Boeing Co. v. Movassaghi*
   768 F.3d 832 (9th Cir. 2014)......................................................2, 6, 12, 13

*Chamber of Commerce of U.S. v. Whiting*
   563 U.S. 582 (2011) .........................................................................5

*Confederated Tribes & Bands of the Yakama Indian Nation v. Gregoire*
   658 F.3d 1078 (9th Cir. 2011)........................................................2, 3, 4

*CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*
   928 F.3d 832 (9th Cir. 2019)..........................................................5

*Dep't of Employment v. United States*
   385 U.S. 355 (1966) ....................................................................7, 8, 10

*Fasano v. Fed. Reserve Bank of New York*
   457 F.3d 274 (3d Cir. 2006) ...........................................................8

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*
   314 U.S. 95 (1941) .........................................................................8, 9

*Gartrell Construction Inc. v. Aubry*
   940 F.2d 437 (9th Cir. 1991) ..........................................................6

*Goodyear Atomic Corp. v. Miller*
   486 U.S. 174 (1988) ....................................................................*passim*

*Hancock v. Train*
   426 U.S. 167 (1976) ....................................................................6, 7, 11

*Hous. Auth. of City of Seattle v. State of Wash., Dep't of Revenue*
   629 F.2d 1307 (9th Cir. 1980)........................................................9

*James v. Dravo Contracting Co.*
   302 U.S. 134 (1937) ....................................................................3, 8

*Johnson v. Maryland*
   254 U.S. 51 (1920) .......................................................................6, 7

ii

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3
4
*Kansas v. Garcia*
    140 S. Ct. 791 (2020) ........................................................... 5

5
6
*Kuntz v. Lamar Corp.*
    385 F.3d 1177 (9th Cir. 2004) ............................................. 9

7
8
*Lake Mohave Boat Owners Ass'n v. National Park Service¸* 78
    F.3d 1360, 1365 (9th Cir. 1995) ......................................... 13

9
*Lewis v. United States*
    680 F.2d 1239 (9th Cir. 1982) .......................................... 8, 9

10
11
*McCulloch v. Maryland*
    4 Wheat. 316 (1819) .......................................................... 3

12
13
*Mount Olivet Cemetery Ass'n v. Salt Lake City*
    164 F.3d 480 (10th Cir. 1998) ................................... 7, 9, 10

14
15
*North Dakota v. United States*
    495 U.S. 423 (1990) .................................................. 2, 3, 4, 5

16
17
*Oklahoma Tax Comm'n v. Chickasaw Nation*
    515 U.S. 450 (1995) ........................................................... 3

18
19
*Parola v. Weinberger*
    848 F.2d 956 (9th Cir. 1988) ............................................. 12

20
21
*People of State of Cal. v. Walters*
    751 F.2d 977 (9th Cir. 1984) ............................................. 12

22
*Rust v. Johnson*
    597 F.2d 174 (1979) ........................................................... 8

23
24
*Solano Garbage Co. v. Cheney*
    779 F. Supp. 477 (E.D. Cal. 1991) ................................... 12

25
26
*South Carolina v. Baker*
    485 U.S. 505 (1988) ........................................................... 3

27
28
*U.S. Postal Serv. v. Town of Greenwich, Conn.*
    901 F. Supp. 500 (D. Conn. 1995) ................................... 12

Defendants' Additional Brief (3:19-cv-02491 JLS-WVG)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United Kingdom Ministry of Defence v. Trimble Navigation Ltd.*
422 F.3d 165 (4th Cir. 2005) ................................................................. 13

*United States v. Boyd*
378 U.S. 39 (1964) ...................................................................... 3, 4, 7, 8

*United States v. California*
921 F.3d 865 (9th Cir. 2019) ..................................................................... 2

*United States v. City of Arcata*
629 F.3d 986 (9th Cir. 2010) .................................................................. 2, 3

*United States v. City of St. Paul*
258 F.3d 750 (8th Cir. 2001) ................................................................... 12

*United States v. County of Fresno*
429 U.S. 452 (1977) ................................................................................. 3

*United States v. Hollingshead*
672 F.2d 751 (9th Cir. 1982) ............................................................... 8, 10

*United States v. New Mexico*
455 U.S. 720 (1982) .......................................................................*passim*

*United States v. State of Mich.*
851 F.2d 803 (6th Cir. 1988) ............................................................... 8, 11

*United States v. State Tax Comm'n of Mississippi*
421 U.S. 599 (1975) ................................................................................. 2

**STATUTES**

United States Code, Title 12
§ 1752 ..................................................................................................... 11

United States Code, Title 28
§ 1491(a)(1) ........................................................................................... 13

United States Code, Title 41
§ 7103(a) ................................................................................................ 13

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Penal Code
    § 9500(b)..................................................................................................... 4
    § 9505(a).................................................................................................. 13

**OTHER AUTHORITIES**

Office of Inspector General, Dept. of Homeland Security, ICE Does
    Not Fully Use Contracting Tools to Hold Detention Facility
    Contractors Accountable for Failing to Meet Performance
    Standards (Jan. 29, 2019),
    https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-
    18-Jan19.pdf (last visited Aug. 13, 2020) .......................................... 10

Our Locations, THE GEO GROUP, INC.,
    https://www.geogroup.com/Locations ........................................... 9, 10

U.S. Customs & Immigration Enf't, Performance-Based National
    Detention Standards 2011, U.S. DEP'T OF HOMELAND SEC.
    (rev. Dec. 2016), https://bit.ly/3jZA6La............................................. 10

Defendants' Additional Brief (3:19-cv-02491 JLS-WVG)

# INTRODUCTION

Defendants respectfully submit this brief in response to the Court's Order Requesting Additional Brief, ECF. No 45 (Order).  The Court asked for further discussion of (1) whether AB 32 is a direct regulation of the United States in violation of intergovernmental immunity, and (2) the Court's jurisdiction over Plaintiff The GEO Group, Inc.'s fourth cause of action.

The answer to Court's first question, and the below discussion of the three sub-issues the Court identified in relation to that question, further demonstrate that AB 32 does not directly regulate the federal government.  First, although the concept of "legal incidence" usually arises in the context of intergovernmental immunity cases related to state taxes, it is helpful here, because it confirms that a party is only "directly regulated" when it is subject to a direct legal obligation.  Second, private detention contractors are not federal instrumentalities; they are purely private, for-profit entities that contract with numerous governments and are not controlled by the federal government.  Third, privately owned detention centers are not federal installations because they are not "federally owned facilities performing a federal function."  *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988).

As to the Court's jurisdiction question, neither the Contract Disputes Act nor the Tucker Act deprives this Court of jurisdiction over The GEO Group's fourth cause of action.

For these reasons, and for the reasons explained in Defendants' prior briefing, AB 32 does not directly regulate the federal government; therefore, it does not violate intergovernmental immunity.  Nor does the Court lack jurisdiction over the fourth cause of action, which should be dismissed on the merits.

**ARGUMENT**

I.   **AB 32 DOES NOT DIRECTLY REGULATE THE FEDERAL GOVERNMENT**

    A.   **The "Legal Incidence" of AB 32 Falls on Private Contractors Only**

"A state regulation is invalid only if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality).[1] AB 32 does not directly regulate the federal government, including because the law's "legal incidence" falls only on private detention contractors, not the federal government itself.

The concept of "legal incidence" typically arises in the context of cases involving federal government or Indian tribal immunity to state taxes. Those cases instruct that a party bearing the "legal incidence" of a tax is the "entity or person [who] bears the ultimate legal obligation to pay the tax to the taxing authority." *Confederated Tribes & Bands of the Yakama Indian Nation v. Gregoire*, 658 F.3d 1078, 1084 (9th Cir. 2011); *see also United States v. State Tax Comm'n of Mississippi*, 421 U.S. 599, 608 (1975) ("where a State requires that its sales tax be passed on to the purchaser and be collected by the vendor from him, this establishes as a matter of law that the legal incidence of the tax falls upon the purchaser").

A law's "legal incidence" is central to the intergovernmental immunity analysis in tax cases involving federal contractors because "[t]he Constitution immunizes the United States and its property from taxation by the States, but it does not forbid a tax whose legal incidence is upon a contractor doing business with the United States, even though the economic burden of the tax, by contract or

---

[1] The United States notes for the first time that *North Dakota* was a plurality decision. Regardless, the *North Dakota* test for the intergovernmental immunity of federal contractors has governed subsequent cases and governs here. *See e.g.*, *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014); *United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019).

2

1  otherwise, is ultimately borne by the United States." *United States v. Boyd*, 378

2  U.S. 39, 44 (1964) (internal citation omitted).  "Thus, immunity may not be

3  conferred simply because the tax has an effect on the United States, or even because

4  the Federal Government shoulders the entire economic burden of the levy." *United*

5  *States v. New Mexico*, 455 U.S. 720, 734 (1982); *see also Confederated Tribes &*

6  *Bands of the Yakama Indian Nation*, 658 F.3d at 1084 ("The Supreme Court has

7  clarified that an economic analysis of the 'realities' of taxation should not be a

8  substitute for legal-incidence analysis") (citing *Oklahoma Tax Comm'n v.*

9  *Chickasaw Nation*, 515 U.S. 450, 459-60 (1995))).

10      The concept of "legal incidence" is also appropriately considered in the

11  analysis of state laws like AB 32, even though they do not involve taxation issues.

12  In *North Dakota*, the Supreme Court evaluated whether non-tax regulations on

13  federal contractors related to alcohol labeling and reporting violated

14  intergovernmental immunity.  *See* 495 U.S. at 428, 434 (plurality).  The Court

15  explained that, under its prior decisions, immunity was violated only where a state

16  law "regulate[s] the [federal] Government *directly*" and that the Supreme Court had

17  "decisively rejected the argument that any state regulation which indirectly

18  regulates the Federal Government's activity is unconstitutional." *Id.* at 434

19  (emphasis added).  In support of the direct regulation test, the Court cited numerous

20  state tax cases that applied the "legal incidence" test to determine whether the

21  federal government or its contractor was regulated.  *See id.* at 434-35 (plurality)

22  (citing, e.g., *McCulloch v. Maryland*, 4 Wheat. 316, 425-37 (1819); *James v. Dravo*

23  *Contracting Co.*, 302 U.S. 134 (1937); *South Carolina v. Baker*, 485 U.S. 505, 520

24  (1988); *United States v. County of Fresno*, 429 U.S. 452, 467-68 (1977)).

25      The direct regulation rule in non-tax cases therefore derives, at least in part,

26  from the legal incidence test in tax cases.  *See id.*; *see also United States v. City of*

27  *Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (explaining that the doctrine of

28  intergovernmental immunity arose in *McCulloch v. Maryland* and is now governed

3

by the rule stated in *North Dakota*).  Direct regulation is therefore best understood to exclude regulations "whose legal incidence is upon a contractor," *see Boyd*, 378 U.S. at 44, rather than upon the federal government.

Here, only private detention contractors bear the legal incidence of AB 32 because only they have any "ultimate legal obligation" to the State under the law. *See Confederated Tribes & Bands of the Yakama Indian Nation*, 658 F.3d at 1084. *See AB 32, §§ 1, 2.*  AB 32 imposes no legal obligations on the federal government itself.  *See id.*  If a private detention contractor were to operate in California under a new contract, only the contractor would violate AB 32 and only it could be subject to legal consequences.  The federal government, on the other hand, is incapable of violating AB 32; the United States might only indirectly experience the law's effects resulting from California's regulation of third-party contractors.[2]  *See New Mexico*, 455 U.S. at 734 (no immunity "simply because the tax has an effect on the United States, or even because the Federal Government shoulders the entire economic burden of the levy").  Because the federal government does not bear AB 32's legal incidence, the law does not directly regulate the federal government.  *See North Dakota*, 495 U.S. at 434-35 (plurality).

Plaintiffs the United States and the GEO Group argue that the "legal incidence" of AB 32 is not relevant here because AB 32 is not a tax law.  They argue that other types of laws directly regulate the federal government if they interfere with federal contractor operations.  *See* U.S. Supp. Br. at 3-4; GEO Add'l

_____

[2] The United States asserts that "A.B. 32 prohibits the Federal Government and its private-detention-facility suppliers from entering or re-newing a contract to perform the sovereign task of housing federal prisoners and detainees."  U.S. Supp. Br., ECF No. 50, at 6.  However, AB 32 does not legally prohibit the United States from any conduct, including entering or renewing any contracts.  *See* AB 32, §§ 1, 2.  Nor does AB 32 legally obligate the federal government (or any government) in any way merely because AB 32 applies to entities "operating pursuant to a contract or agreement with a governmental entity."  *See* GEO Add'l Br., ECF No. 49, at 6 (citing Cal. Penal Code § 9500(b).  That description merely reflects the reality that, without a government contract, a private person's detention of another would likely already amount to an illegal act.

Br. at 3-4, 5.  There are at least three problems with this argument.  First, it ignores an important distinction between direct regulation of the federal government, on one hand, and mere effects felt by the federal government, on the other.  *See North Dakota,* 495 U.S. at 435 (plurality) (stating that the Supreme Court had "decisively rejected the argument that any state regulation which indirectly regulates the Federal Government's activity is unconstitutional").[3]

Second, Plaintiffs' interference argument erroneously conflates the standard applicable to their obstacle-preemption claim with the standard governing their separate challenge under the intergovernmental immunity doctrine.  But obstacle preemption is a separate and distinct doctrine under the Supremacy Clause.  It applies "when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 849 (9th Cir. 2019).  However, obstacle preemption "must stem from either the Constitution itself or a valid statute enacted by Congress."  *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020); *see also Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) (plurality) (preemption cannot be based on "a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives").  As Defendants have argued in previous briefing, Plaintiffs have failed to show that any federal law preempts AB 32 under an obstacle preemption theory, and they cannot attempt an end run around that failing by re-casting the relevant test here.

Third, the cases cited by Plaintiffs do not support their suggestion that purported interference with federal *contractors'* operations constitutes direct regulation of the federal government for intergovernmental immunity purposes.

---

[3] The United States understandably would prefer the expansive version of intergovernmental immunity doctrine under which any state law that indirectly impacts federal operations is invalid because the federal government would not need to accommodate the sovereign interests of the states.  But, as the Supreme Court plurality in *North Dakota* noted, that rule has been "thoroughly repudiated," *id.*, and this Court should accordingly decline to extend the direct regulation prong of intergovernmental immunity here.

In *Boeing*, the court found direct regulation because:  (1) the state statute held the federal government (not the contractor) directly liable for performing the clean-up work; (2) the clean-up standards at issue applied to federal property; and, (3) the state law sought to supplant federal regulations incorporated into the contract.  *See Boeing Co. v. Movassaghi*, 768 F.3d 832, 839-840 (2014).  This is confirmed by the fact that the court cited only three legal authorities on the issue of direct regulation: (1) California Senate Bill 990 (identifying the federal government as the "responsible party"); (2) *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988) ("a federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor"); and, (3) *Gartrell Construction Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991) (ruling that regulations contained in federal contract preempted state law).  *Id.*

As Defendants have explained in prior briefing, the key features of the authorities relied upon by the Ninth Circuit in *Boeing* are absent here.  In particular, AB 32 prescribes only the conduct of private detention companies, not the federal government.  *See* AB 32 §§ 1, 2.  Private contractors, not the federal government, own nearly all facilities at issue.  *See* U.S. Mtn. for Prelim. Inj., ECF No. 4-1, at 6-10.  And, Plaintiffs have identified no federal regulations incorporated into contract terms that preempt AB 32.  *See e.g.*, *id.* at 34-35.  *Boeing* therefore does not support the purported rule that direct regulation occurs any time a state law regulates a federal contractor's operations.[4]

The GEO Group also argues that *Hancock v. Train*, 426 U.S. 167 (1976), and *Johnson v. Maryland*, 254 U.S. 51 (1920), counsel against consideration of the legal incidence test with respect to laws like AB 32 that do not concern taxation.

---

[4] The United States also cites a string of cases to support the statement that "activities of the Federal Government are free from regulation by state."  *See* U.S. Supp. Br. at 2.  These cases are not helpful to the direct regulation analysis here, however, because they all involve laws that regulated the federal government on their face, not a federal contractor, as here.

*See* GEO Add'l Br. at 5.  However, the legal incidence test is used to determine whether a tax law applies to the federal government, as opposed to its contractor. *See Boyd*, 378 U.S. at 44.  The laws at issue in *Hancock* and *Johnson* directly regulated the federal government because they clearly regulated federal property and a federal government employee, respectively.  *See Hancock*, 426 U.S. at 198-199; *Johnson*, 254 U.S. at 56-57.  There was therefore no reason for the courts to consider the legal incidence test in those circumstances.  *See, e.g.*, *Hancock*, 426 U.S. at 176, 198-99; *Johnson*, 254 U.S. at 56-57; *see also Goodyear Atomic Corp.*, 486 U.S. at 181 ("*Hancock* thus establishes that *a federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such legislation*" (emphasis added)).  In contrast, AB 32 does not apply to federal employees and nearly all of the facilities at issue are privately owned.

### B.   The GEO Group and Other Private Detention Contractors Are Not Federal Government Instrumentalities

Private detention companies such as The GEO Group are not federal government instrumentalities.  A federal instrumentality is sometimes referred to as "virtually . . . an arm of the Government," *United States v. New Mexico*, 455 U.S. 720, 736-37 (1982), and is "so assimilated by the Government as to become one of its constituent parts," *United States v. Boyd*, 378 U.S. 39, 47 (1964).

As The GEO Group concedes, "there is no simple test for ascertaining whether an institution is so closely related to governmental activity as to become" an instrumentality of the federal government.  *See* GEO Add'l Br. at 8 (quoting *Dep't of Employment v. United States*, 385 U.S. 355, 358-59 (1966)).  "Courts therefore have looked to a variety of factors to make this determination."  *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998).

The Supreme Court and Ninth Circuit have reasoned that an entity is most likely be a federal instrumentality if it is:

7

1. Created or owned by the federal government.  *See Dep't of Employment*, 385 U.S. at 358 (Red Cross); *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 102-03 (1941) (federal land bank); *United States v. Hollingshead*, 672 F.2d 751, 754 (9th Cir. 1982) (federal reserve bank); *Rust v. Johnson*, 597 F.2d 174 (1979) (Fannie Mae).

2. Heavily regulated and controlled by the federal government.  *See Dep''t of Employment*, 385 U.S. at 358; *Hollingshead*, 672 F.2d at 754; *see also United States v. State of Mich.*, 851 F.2d 803, 806-07 (6th Cir. 1988) (federal credit union).

3. Not an independent contractor.  *See United States v. New Mexico*, 455 U.S. 720, 736-37 (1982) (contractors that operated federal atomic laboratories were not instrumentalities); *United States v. Boyd*, 378 U.S. 39, 48 (1964) (contractors operating and building atomic facilities were not instrumentalities); *James v. Dravo Contracting Co.*, 302 U.S. 134, 149 (1937) (contractor constructing river dams and locks not instrumentality).

4. Not for profit.  *See Hollingshead*, 672 F.2d at 753-54; *see also Dep't of Employment*, 385 U.S. at 358; *Fasano v. Fed. Reserve Bank of New York*, 457 F.3d 274, 282-83 (3d Cir. 2006) (federal reserve bank).

5. Serving an "important governmental function."  *See Fed. Land Bank of St. Paul*, 314 U.S. at 102; *Lewis v. United States*, 680 F.2d 1239, 1242 (9th Cir. 1982) (federal reserve bank).

8

1  *See also Mount Olivet Cemetery Ass'n*, 164 F.3d at 486 (collecting cases and

2  enumerating similar factors).[5]

3      Based on these factors, private detention contractors such as The GEO Group

4  are clearly not federal instrumentalities. These companies are private, for-profit

5  independent contractors. *See*, *e.g.*, Compl., ¶ 12; Dec. of Amber Martin in Supp. of

6  Mtn. for Prelim. Inj., ECF No. 15-3, ¶ 2. Plaintiffs' allegations and evidentiary

7  submissions do not show that private detention contractors are created or owned by

8  the government, heavily regulated and controlled by the federal government, or not

9  for profit. The GEO Group, for one, does not even contract exclusively with the

10 federal government, but also with state and international governments.[6]  *See Hous.*

11 *Auth. of City of Seattle v. State of Wash., Dep't of Revenue*, 629 F.2d 1307, 1312

12 (9th Cir. 1980) ("The interests advanced by housing agencies are not exclusively

13 federal, but are shared by all levels of government in our federalist system").

14      In Plaintiffs' additional briefs, the United States avoids taking a position on

15 whether or not private detention contractors constitute federal instrumentalities, *see*

16 U.S. Supp. Br., and The GEO Group carefully specifies that the company's

17 federally-contracted "detention facilities" are federal instrumentalities, *see* GEO

18 Add' Br. at 8, ln. 1-2. In support, The GEO Group asserts that federal detention is

19 an "important governmental function." *Id.* at 8 (citing *Fed. Land Bank of St. Paul*,

20 314 U.S. at 102). However, as explained above, the federal instrumentality analysis

21 involves several additional factors, none of which The GEO Group satisfies.

22 Moreover, a court should avoid designating an independent contractor as a federal

23

24      [5] "The status of federal instrumentality for one purpose does not mean that
the same entity is a federal instrumentality for" all other purposes. *Kuntz v. Lamar*

25 *Corp.*, 385 F.3d 1177, 1185 (9th Cir. 2004) (citing *Lewis*, 680 F.2d at 1242-43).
However, as discussed below, private detention contractors such as The GEO

26 Group have no indicia of federal instrumentalities. The Court therefore need not
consider whether federal instrumentality exists for the purposes of AB 32,

27 specifically.

28      [6] *See* Our Locations, THE GEO GROUP, INC.,
https://www.geogroup.com/Locations (last visited Aug. 13, 2020).

9

1  instrumentality based solely on a value judgement about the contractor's

2  importance.  "If the immunity of federal contractors is to be expanded beyond its

3  narrow constitutional limits, it is Congress that must take responsibility for the

4  decision, by so expressly providing as respects contracts in a particular form, or

5  contracts under particular programs."  *New Mexico*, 455 U.S. at 737-38; *see also*

6  *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998)

7  ("Designating an entity a federal instrumentality colors the typical preemption

8  analysis by requiring the court to presume, in the absence of clear and unambiguous

9  congressional authorization to the contrary, that Congress intended to preempt state

10  or local regulation of the federal instrumentality").

11      The GEO Group otherwise argues only that it is a federal instrumentality

12  because it is subject to government regulation.  *See* GEO Add' Br. at 9.  Its only

13  evidence on this point is the existence of the Federal Performance-Based Detention

14  Standards.  *See* U.S. Customs & Immigration Enf't, Performance-Based National

15  Detention Standards 2011, U.S. DEP'T OF HOMELAND SEC. (rev. Dec. 2016),

16  https://bit.ly/3jZA6La.  This document is not a formal regulation carrying the force

17  of law, and The GEO Group neither alleges nor shows that its provisions are

18  enforced.[7]  The Standards hardly equate to the type of binding obligations imposed

19  by law on recognized federal instrumentalities.  *See*, *e.g.*, *Dep't of Employment*, 385

20  U.S. at 359 (Red Cross subject to statutes governing entities' activities and

21  leadership); *Hollingshead*, 672 F.2d at 754 (federal reserve bank subject to statutes

22  governing oversight of entity's expenditures and distribution of its profits); *see also*

23  ―――――――――――

24  [7] In fact, the document's preface explains that it has been drafted "to include a range of compliance, from minimal to optimal. As such, these standards can be implemented widely, while also forecasting our new direction and laying the

25  groundwork for future changes."  *Id.* at i.  Moreover, a January 2019 report by the Office of Inspector General found that "ICE does not adequately hold detention

26  facility contractors accountable for not meeting performance standards."  *See* OFFICE OF INSPECTOR GENERAL, DEPT. OF HOMELAND SECURITY, ICE DOES NOT

27  FULLY USE CONTRACTING TOOLS TO HOLD DETENTION FACILITY CONTRACTORS ACCOUNTABLE FOR FAILING TO MEET PERFORMANCE STANDARDS (Jan. 29, 2019),

28  https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf (last visited Aug. 13, 2020).

*Michigan*, 851 F.2d at 806 ("federal credit unions are extensively regulated under federal law") (citing 12 U.S.C. § 1752).

For these reasons, private detention contractors such as The GEO Group are not federal instrumentalities.

### C.   Privately-Owned Detention Facilities Are Not Federal Installations

Privately-owned detention facilities are not "federal installations" under *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, (1988).  A federal installation is a "federally owned facility performing a federal function."  *Goodyear,* 486 U.S. at 181.[8]

In *Goodyear*, the Court articulated the rule that "federal installations are shielded by the Supremacy Clause from direct state regulation."  *Id.* at 180.  It then identified the specific issue in the case at hand:  "whether the *federally owned* Portsmouth facility is . . . shielded from direct state regulation even though the facility is operated by a private party under contract with the United States."  *Id.* (emphasis added).  The Court then analogized to *Hancock v. Train*, 426 U.S. 167 (1976), noting that "[o]ne of the facilities at issue in *Hancock* was the Paducah Gaseous Diffusion Plant, *which, like the Portsmouth facility, is a federally owned* nuclear production facility operated by a private contractor."  *Id.* at 180-81 (emphasis added).  The Court then set forth the rule from *Hancock*, that "a *federally owned* facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor."  *Id.* at 181 (emphasis added).

---

[8] In its Order, the Court invited the parties to stipulate regarding the applicability of AB 32 to privately operated, but federally owned detention facilities and to Residential Reentry Centers (RRCs).  *See* ECF No. 45 at 2, n.1.  The parties are in communications about submitting a written stipulation to the Court related to the RRCS.  However, they are unable to enter into a stipulation related to any privately operated, but federally owned detention facilities.

1    The Supreme Court's definition of a federal installation as a "federally owned
2    facility performing a federal function" is consistent with numerous Supremacy
3    Clause cases that refer to "federal installations."  *See*, *e.g.*, *People of State of Cal. v.*
4    *Walters*, 751 F.2d 977, 978 (9th Cir. 1984) (Veterans Affairs hospital); *Parola v.*
5    *Weinberger*, 848 F.2d 956, 957, 960-61 (9th Cir. 1988) (Army and Navy
6    properties); *Solano Garbage Co. v. Cheney*, 779 F. Supp. 477, 484 (E.D. Cal. 1991)
7    (Air Force base); *United States v. City of St. Paul*, 258 F.3d 750, 752 (8th Cir.
8    2001) (residential properties owned by Department of Housing and Urban
9    Development); *U.S. Postal Serv. v. Town of Greenwich, Conn.*, 901 F. Supp. 500,
10   504 (D. Conn. 1995) (building owned by U.S. Postal Service).

11   Privately-owned detention centers are not federal installations because they are
12   not federally owned.  Importantly, The GEO Group does not argue to the contrary.
13   The United States, meanwhile, did not allege that privately-owned detention
14   facilities are federal installations until its most recent brief.  The United States now
15   argues that private property can constitute a federal installation, citing only *Boeing*
16   in support.  *See* U.S. Supp. Br. at 9 (citing 768 F.3d at 840).  In *Boeing*, the
17   property at issue was partly federally owned and partly privately owned, 768 F.3d
18   at 834, and the private property at issue was "90 acres of the site" that the U.S.
19   Department of Energy and its predecessor agencies "leased . . . from Boeing" to
20   build and operate "16 nuclear reactors of various sorts and over 200 facilities for
21   nuclear research," *id*.  Accordingly, the "private property" at issue in *Boeing* had
22   been leased and was managed and controlled by the federal government when the
23   federal activities as issue occurred.  Regardless, in its reasoning, the court quoted
24   *Goodyear* for the proposition that a "federally owned facility performing a federal
25   function is shielded from direct state regulation, even though the federal function is
26   carried out by a private contractor."  *Id.* at 839 (citing *Goodyear*, 486 U.S. at 181).
27   Thus, the material fact bringing the case under the purview of *Goodyear* was that
28   the property was federally owned or directly controlled by the federal government

12

1   while conducting federal activities on it.  *Boeing* therefore does not support the
2   proposition that "federal installations" include properties that are entirely privately
3   owned and controlled by the private entity.

4       Privately owned detention centers are therefore not federal installations and
5   are not directly regulated by AB 32.

6   **II.    THE GEO GROUP'S FOURTH CAUSE OF ACTION IS NOT SUBJECT TO
7   THE CONTRACT DISPUTES ACT OR THE TUCKER ACT**

8       The Contract Disputes Act generally applies to claims between a contractor
9   and the federal government.  The GEO Group's fourth cause of action against
10  California defendants is not such a claim.  *See* 41 U.S.C. § 7103(a); *see also United*
11  *Kingdom Ministry of Defence v. Trimble Navigation Ltd.*, 422 F.3d 165, 170-71
12  (4th Cir. 2005).  The Tucker Act, meanwhile, generally applies to monetary
13  "claim[s] against the United States."  28 U.S.C. § 1491(a)(1); *Lake Mohave Boat*
14  *Owners Ass'n v. National Park Service¸*78 F.3d 1360, 1365 (9th Cir. 1995).  That
15  also is not the case with the fourth cause of action.  Accordingly, Defendants'
16  position is that the Contract Disputes Act and Tucker Act do not deprive this Court
17  of jurisdiction over The GEO Group's fourth case of action.  Nevertheless, that
18  claim should be dismissed on the merits, because AB 32 bars private entities from
19  operating private detention facilities pursuant to "any extensions made to or
20  authorized by that contract."  *See* Cal. Penal Code § 9505(a).

21  **CONCLUSION**

22      Defendants respectfully ask the Court to dismiss Plaintiffs' complaints and
23  deny their motions for preliminary injunctions.

24
25
26
27
28

| | |
|---|---|
| 1 | Dated:  August 18, 2020 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*/s/ Gabrielle D. Boutin*
GABRIELLE D. BOUTIN
Deputy Attorney General
*Attorneys for Defendants Governor
Gavin Newsom and Attorney General
Xavier Becerra, in their official
capacities, and the State of California*

SA2020100025
34309334.docx

14

# CERTIFICATE OF SERVICE

Case·Name:   **The GEO Group, Inc. v. Gavin**          No.      **3:19-cv-02491 JLS-WVG**
             **Newsom, et al**

I hereby certify that on <u>August 18, 2020,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' ADDITIONAL BRIEF IN RESPONSE TO COURT'S JULY 21, 2020 ORDER, ECF NO. 45, RE: JULY 16, 2020 HEARING**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 18, 2020,</u> at Sacramento, California.

 

Eileen A. Ennis
Declarant

_____
Signature

SA2020100025
34327811.docx